No. 25-1189

IN THE

# United States Court of Appeals for the Fourth Circuit

---

NATIONAL ASSOCIATION OF DIVERSITY OFFICERS
IN HIGHER EDUCATION, ET AL.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, ET AL.,

*Defendants-Appellants.*

---

On Appeal from the U.S. District Court
for the District of Maryland
Case No. 1:25-cv-00333-ABA

---

## RESPONSE IN OPPOSITION TO MOTION FOR STAY PENDING APPEAL

---

Ananda V. Burra
DEMOCRACY FORWARD FOUNDATION
P.O. Box. 34553
(202) 448-9090
aburra@democracyforward.org

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

STATEMENT ...................................................................................................1

ARGUMENT ....................................................................................................3

I.  The Government Has Failed to Demonstrate Likely Success on the
    Merits. .................................................................................................4

    A.  Well-established Constitutional Principles Prohibit Government
        Intrusion into Protected Rights....................................................5

    B.  The Enjoined Provisions Violate Constitutionally Protected
        Rights. ..........................................................................................8

    C.  The Government's Attempts To Evade Judicial Review Fail.....15

II. The Government Will Not Suffer Irreparable Harm. ...........................18

III. The Public Interest and Irreparable Harm to Plaintiffs Disfavor the
     Government's Extraordinary Request for a Stay...................................19

IV. The Scope of Relief Is Necessary and Appropriate.............................21

CONCLUSION ...............................................................................................23

The Preliminary Injunction ensures that two Executive Orders[1] targeting diversity, equity, inclusion, and accessibility (DEIA) will not trample on the free speech and due process rights of Plaintiffs-Appellees and those similarly situated. Without it, Plaintiffs and others will undoubtedly be chilled from expressing views with which this Administration disagrees for fear of enforcement actions or losing federal funds. The Government fails to meet its burden to stay the District Court's well-reasoned order.

## STATEMENT

President Trump's Executive Orders purportedly prohibit 'illegal' DEIA. The key terms, including DEI, DEIA, and equity-related, are undefined. The Orders do not distinguish between lawful and unlawful DEI or DEIA policies, programs, or principles. *See, e.g.*, J20 Order § 1 (Purpose and Policy) (referring to all DEI as "illegal and immoral discrimination"); J21 Order § 1 (Purpose) (referring to "illegal DEI and DEIA policies").

Three provisions ("Enjoined Provisions") target the private sector, including federal grantees or contractors:

---

[1] Exec. Order No. 14,151, *Ending Radical and Wasteful Government DEI Programs and Preferencing,* 90 Fed. Reg. 8339 (Jan. 20, 2025) ("J20 Order"), *available at* https://public-inspection.federalregister.gov/2025-01953.pdf, and Exec. Order No. 14,173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8633 (Jan. 21, 2025) ("J21 Order"), *available at* https://www.govinfo.gov/content/pkg/FR-2025-01-31/pdf/2025-02097.pdf.

Termination Provision: Agencies shall "terminate, to the maximum extent allowed by law, all . . . 'equity-related' grants or contracts." J20 Order § 2(b)(i).

Certification Provision: Agencies "shall include in every contract or grant award" a "term requiring" the grantee or contractor "to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." J21 Order § 3(b)(iv)(B). That certification is enforceable under the False Claims Act (FCA). *See* J21 Order § 3(b)(iv)(A).

Enforcement Threat Provision: The Attorney General shall develop "[a] plan . . . to deter [private sector] DEI programs or principles (whether specifically denominated 'DEI' or otherwise) that constitute illegal discrimination or preferences," and work with agencies to identify targets of "potential civil compliance investigations." J21 Order § 4(b), 4(b)(iii).

Federal agencies swiftly began implementing the Enjoined Provisions. *E.g.*, ADD.12-16. Almost immediately, the Department of Labor instructed grantees to "cease *all* award activities related to [DEI or DEIA]," without limiting this order to 'illegal' DEI or DEIA programs. ADD.13 (emphasis added).

The Department of Justice followed. On February 5, 2025, the Attorney General instructed DOJ components to confirm, by March 15, 2025, the termination, to the maximum extent allowed by law, of all 'equity-related' grants or contracts and to "pay particular attention to ending references to DEI and DEIA

. . . including references to 'unconscious bias,' 'cultural sensitivity,' [and] 'inclusive leadership.'" ADD.14. The same day, the Attorney General declared that DOJ would "investigate, eliminate and penalize illegal DEI and DEIA," ADD.14.

On February 13, Plaintiffs—the Mayor and City Council of Baltimore, and organizations representing restaurant workers, diversity professionals, professors, and higher education institutions—challenged enforcement of the Enjoined Provisions as unconstitutional and moved for a TRO/PI. ADD.18. The District Court preliminarily enjoined enforcement of these provisions, ADD.1-3. It held that the Certification and Enforcement Threat Provisions "squarely, unconstitutionally, abridge the freedom of speech," and that the Termination and Enforcement Threat Provisions are likely "unconstitutionally vague on their face." ADD.6 (cleaned up). It subsequently denied the Government's motion to stay pending appeal. ADD.128. On March 10, the District Court clarified the injunction applies to all agencies tasked with enforcement. A.A.2.

## ARGUMENT

The Government is not entitled to the "extraordinary remedy" of a stay pending appeal. *Nken v. Holder*, 556 U.S. 418, 428 (2009). The District Court's preliminary injunction was correctly entered and should remain in effect.

Defendants bear the burden of demonstrating: (1) the likelihood of success on the merits of the appeal; (2) irreparable harm if the stay is denied; (3) that other

parties will not be substantially harmed by the stay; and (4) that granting the stay serves the public interest. *Long v. Robinson*, 432 F.2d 977, 979-981 (4th Cir. 1970). A party seeking a stay on appeal "following the denial of a similar motion by a trial judge" bears a "burden of persuasion" that "is substantially greater than it was before the trial judge." *Id.* at 979; *see also Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020), *as amended* (Jan. 14, 2020) ("Abuse of discretion is a deferential standard, and we may not reverse so long as the district court's account of the evidence is plausible in light of the record[.]") (cleaned up).

The Government cannot carry its burden to show both "a substantial likelihood of success" on the merits, *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 761 (2021), and that the District Court abused its discretion balancing the harms to Plaintiffs and the Government. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 192 (4th Cir. 2013).

## I. The Government Has Failed to Demonstrate Likely Success on the Merits.

The Supreme Court has never wavered from its instruction that "the government may not deny a benefit to a person because he exercises a constitutional right." *Regan v. Tax'n With Representation of Washington*, 461 U.S. 540, 545 (1983) (citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972)). The Government fails to show a likelihood of success on the merits because the Enjoined Provisions violate the First Amendment's free-speech guarantees and the

Fifth Amendment's due-process protections. These constitutional violations persist despite attempts by the Government to manufacture a separation of powers crisis and to negate the clear dictates of the Executive Orders by references to boilerplate 'follow the law' clauses.

### A. Well-established Constitutional Principles Prohibit Government Intrusion into Protected Rights

The Government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). That principle applies even where the Government sets rules for contractors or grantees, because "the liberties of religion and expression may [not] be infringed by the denial of or placing of conditions upon a benefit or privilege." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 606 (1967). Thus, the District Court correctly held that implementing the Enjoined Provisions would likely constitute unconstitutional viewpoint discrimination—the "most 'blatant' and 'egregious form of content discrimination,'" ADD.34 (quoting *Reed*, 576 U.S. at 168-69) —and that the "'prohibitions' on conduct" were unconstitutionally vague because they were not "'clearly defined,'" so "invite[d]" abuse of "arbitrary power." ADD.57 (quoting *Grayned*, 408 U.S. at 108 & *Sessions*, 584 U.S. at 175 (Gorsuch, J., concurring)).

Foundational Supreme Court precedent controls. *Speiser v. Randall* struck down a California law requiring veterans to swear a loyalty oath that, the Court

assumed, reached only *illegal*, thus unprotected, speech because it would also deter legal, protected, speech. 357 U.S. 513, 515 (1958). As here (Br. 19), the government argued the oath restricted only illegal actions, and a veteran could challenge any enforcement that crossed constitutionally protected speech individually. 357 U.S. at 519. Even though the lack of clarity in First Amendment law may have contributed to the chilling effect of the California law, much as the Government claims is the case here with civil rights laws, Br. 15, that did not change the outcome. The Supreme Court struck down the law because it would almost certainly deter protected speech: people would "steer far wider of the unlawful zone," fearing the day that they would have to "bring forth proof and persuade another of the lawfulness of [their] conduct." *Speiser*, 357 U.S. at 525–26 (citations omitted); *see also Counterman v. Colorado*, 600 U.S. 66, 75–76 (2023) (applying *Speiser*'s reasoning); *Rice v. Paladin Enterprises, Inc.*, 128 F.3d 233, 247 (4th Cir. 1997) (First Amendment may "bar" liability for illegal acts "in order to prevent the punishment or even the chilling of entirely innocent, lawfully useful speech"). Here, it is irrelevant that the "government may deny [the private counterparty] the benefit for any number of reasons," because "there are some reasons upon which the government may not rely"—like those that infringe on constitutional rights, "especially . . . freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *see also FCC v. League of Women Voters of California*, 468

U.S. 364, 384 (1984) (government cannot penalize a private party out of "desire to curtail expression of a particular point of view on controversial issues of general interest").

Vagueness doctrine is equally well-established. Under the Fifth Amendment, a law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Constitutional vagueness doctrine requires that *first*, those affected "know what is required of them so they may act accordingly" and *second*, the law provide "precision and guidance . . . so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012). "'[F]or example, [if a] law interferes with the right of free speech or of association, a more stringent vagueness test should apply.'" ADD.41 (quoting *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982)).

The Government's insistence that presidential directives cannot be subject to constitutional vagueness standards, Br. 11, is just wrong. *E.g.*, *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F.Supp.3d 521, 545 (N.D. Cal. 2020) (evaluating executive order under vagueness standard); *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1140, 1145-47 (9th Cir. 2009) (same). And,

contrary to the Government's characterization of *Wills v. Pszczolkowski*, 125 F.4th 534, 539 (4th Cir. 2025) (criminal vagueness standard did not apply to judicial balancing test), the void-for-vagueness doctrine applies beyond statutory contexts. *See, e.g.*, *Lumumba v. Kiser*, 116 F.4th 269 (4th Cir. 2024) (vagueness challenge to prison disciplinary procedures).

Ultimately, agencies cannot exercise their authority and discretion to achieve unconstitutional ends. *McClure v. Ports*, 914 F.3d 866, 871 (4th Cir. 2019) ("[P]ublic officials may not respond to constitutionally protected activity with conduct or speech that would chill or adversely affect this protected activity."); *Student Gov't Ass'n v. Bd. of Trustees of Univ. of Massachusetts*, 868 F.2d 473, 479 (1st Cir. 1989) (same). But as explained below, that is exactly what the Enjoined Provisions do.

### B. The Enjoined Provisions Violate Constitutionally Protected Rights.

The Enjoined Provisions, on their face and as interpreted by federal agencies, violate constitutional rights and have nothing to do with the enforcement of longstanding civil rights laws. The Government's arguments ignore reality and pretend that the Enjoined Provisions have no meaning or effect.

The Certification Provision targets promotion of a concept, DEI. All federal grantees and contractors must certify they do not "promot[e] DEI" in a way that violates federal antidiscrimination laws. J21 Order § 3(b)(iv)(B). That certification

applies to all programs operated by the grantee or contractor, whether federal funds are used or not, ADD.48 (*citing Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214–15 (2013) (striking down statutory "condition[] that seek[s] to leverage funding to regulate speech outside the contours of the program itself")), and is paired with the threat of FCA enforcement. *See* J21 Order § 3(b)(iv)(A); *see also* ADD.52-56.

The Government's claim that this "simply require[s] recipients to certify their compliance with existing legal obligations," Br. 20, is untrue. AmeriCorps, for instance, required grantees to certify that their grants "compl[y] with all administration Executive Orders and do[] not include any activities that promote DEI activities"—without referencing any antidiscrimination laws at all. ADD.26. The Government's inability to answer the District Court's hypothetical questions about how federal contractors and grantees might lawfully promote DEI illustrates the problem. ADD.49. If "[e]ven the government does not know what constitutes DEI-related speech that violates federal anti-discrimination laws," ADD.50, the so-called limitation to "violat[ions] of federal anti-discrimination laws" is as meaningless here as it was in *HIAS*, *infra* at 16-18. The District Court held that Plaintiffs demonstrated likely success on the merits because an ordinary person would be "highly likely to chill their own speech—to self-censor, and reasonably

so—because of the Certification Provision." ADD.50. That is precisely on point

with *Speiser*, *supra* at 6.

Much like the Certification Provision, the Enforcement Threat Provision

uses the threat of civil enforcement. *See* J21 Order § 4(b), 4(b)(iii) (requiring

Attorney General to develop plan to "deter DEI programs or principles" that

"constitute illegal discrimination preferences" by identifying targets for civil

investigation). As the District Court noted, the Enforcement Threat Provision was

explicitly directed at "deter[ring]" some speech on DEI and "encourag[ing]" other

speech in the private sector via the threat of launching investigations and

enforcement actions. ADD.53.

The preliminary injunction prevents agencies from weaponizing FCA and

other enforcement actions based on private parties' certifications or speech—an

appropriate judicial remedy to protect First Amendment rights. "[T]he government

cannot rely on the 'threat of invoking legal sanctions and other means of coercion'

to suppress disfavored speech." ADD.54 (citing *Bantam Books v. Sullivan*, 372

U.S. 58, 67 (1963) & *Nat'l Rifle Assoc. of America v. Vullo*, 602 U.S. 175, 189

(2024)). Just last term, the Supreme Court reiterated that, "although [the

government] can pursue violations of . . . law, [it] cannot do so in order to punish

or suppress . . . protected expression." *Vullo*, 602 U.S. at 196. It did so over the

objection of the defendant there—and the Government here—that such a

prohibition would "interfere with the government's ability to function properly . . . and hamper legitimate enforcement efforts." *Id.* The District Court here followed *Bantam Books*'s instruction to "look through forms to the substance" of governmental attempts to suppress private speech, and its holding in no way interferes with the separation of powers. 372 U.S. at 67. As such, "[t]he White House and Attorney General have made clear, through their ongoing implementation of various aspects of the J21 Order,[2] "that viewpoints and speech considered to be in favor of or supportive of DEI or DEIA are *viewpoints* the government wishes to punish" as illegal discriminatory *conduct*.[3] ADD.54

---

[2] The District Court appropriately considered agency reactions to the Executive Orders to evaluate their plain meaning. "Claims of facial invalidity often rest on speculation about the law's coverage and its future enforcement." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (cleaned up). "In evaluating a facial challenge, the government's authoritative guidelines . . . may be considered by the Court." *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F.Supp.3d 521, 544 (N.D. Cal. 2020) (citing *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992)).

[3] Plaintiffs do not suggest that the First Amendment bars enforcement of civil rights laws against conduct that *in fact* violates antidiscrimination laws—and particularly where, in contrast to the instant case, the Government is not trying to chill speech in a viewpoint-discriminatory manner. *See, e.g.*, *Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, 641 F. Supp. 3d 1218, 1274 (N.D. Fla. 2022). Instead of "focus[ing] on regulating *conduct* rather than *speech*" like Title VII, the Enforcement Threat Provision focuses on regulating speech and so is unconstitutional. *Id.*

The Government's citations are inapposite. For instance, in *American Alliance for Equal Rights. v. Fearless Fund Management., LLC*, cited Opp. Br. 16, the Eleventh Circuit reiterated the Supreme Court's holding that targeted

(emphasis added). And Plaintiffs have shown how they have historically engaged in protected speech on DEI that could now be termed unlawful and chilled. ADD.56

The Government attempts to rescue the Enforcement Threat Provision's vagueness by suggesting it is merely part of a larger J21 Order reporting provision that "does not authorize[] or require any enforcement action." Br. 14. However, the Government's implementation belies that argument—for example, Attorney General Bondi, citing the J21 Order, committed not only that the DOJ "*will* investigate, eliminate, and penalize illegal DEI and DEIA preferences" it will also identify "proposals for criminal investigation." ADD.14 (emphasis added). Thus, the Enforcement Threat Provision subjects Plaintiffs NADOHE and AAUP and their members to civil and criminal investigations, "yet neither the J20 nor the J21 Order gives guidance on what the new administration considers to constitute 'illegal DEI discrimination and preferences,' *id.* § 4(b)(iv), . . . or what types of 'DEI programs or principles' the new administration considers 'illegal' and is seeking to 'deter,' *id.* § 4(b)(iii)." ADD.57. This is the essence of vagueness

---

enforcement of civil rights laws is distinct from sanctioning *expressive commitments* to ideals about equality. 103 F.4th 765 (11th Cir. 2024); *accord Rice v Paladin Enters.*,128 F.3d at 243 (4th Cir. 1997) (in a case relating to publishing "Hit Man: A Technical Manual for Independent Contractors" in a murder case, holding that aiding and abetting a criminal act is not protected by the First Amendment, but "abstract advocacy" is protected).

because it "impermissibly delegates basic policy matters to [the Government] for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

Finally, the Termination Provision mandates that agencies "shall" "terminate . . . ," "to the maximum extent allowed by law, all . . . 'equity-related' grants or contracts." J20 Order § 2(b)(i). This is not a suggestion to agencies: the Termination Provision uses the word "shall," and agencies have interpreted it as a command. Agencies have instructed grantees to "immediately terminate, to the maximum extent, all programs, personnel, activities, or contracts promoting [DEI] at every level and activity" that are supported by federal awards. ADD.10.

The term "'equity-related' grants" in the J20 Order remains unconstitutionally vague on its face because "[i]t is wholly unclear how strong or how tenuous a grant or contract must 'relate[]' to the topic of 'equity' to be subject to termination." ADD.43. Grantees are left to preemptively change their speech to maintain their federal funding. The District Court thus found the Termination Provision enforced in an arbitrary and discriminatory manner when, *inter alia*, grants were targeted "simply because the word 'equity' appears in a grant narrative." ADD.44. The Centers for Disease Control, for instance, directed that any "vestige, remnant, or renamed piece of any DEI programs funded by the U.S.

government under this award are immediately, completely, and permanently terminated." ADD.13. That is unconstitutional.

It does not help the Government to highlight that agencies might have *some* discretion to terminate grants or contracts, Br. 12, because agencies still cannot restrict constitutional rights in the process, *see McClure v. Ports*, 914 F.3d 866, 871 (4th Cir. 2019). In any event, the Government's claimed authority goes far beyond the regulatory text. 2 C.F.R. § 200.340(a)(4) allows termination only "pursuant to the terms and conditions of the Federal award," that is, the *existing* terms and conditions of the grant or contract may allow for termination. Federal agencies may not impose blanket terminations on grants, without reference to their specific terms, based on broad policy directives.

The Government's analogy to *Building & Constr. Trades Dep't v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002), Br. 13, likewise fails. *Allbaugh* is inapposite where, as here, an executive order "commands action," such that "there is more than a 'mere possibility that some agency might make a legally suspect decision.'" *San Francisco*, 897 F.3d at 1240 (distinguishing *Allbaugh*, 295 F.3d at 33). A nearly identical argument was rejected recently. *See PFLAG v. Trump*, No. 25-337-BAH, 2025 WL 685124, at *16 (D. Md. Mar. 4, 2025) (government could not convert its "limited [Congressionally granted] discretion" into broad authority to "condition

the entirety of [plaintiffs'] federal funding" on compliance with the President's executive order).

**C. The Government's Attempts To Evade Judicial Review Fail.**

The Government takes the radical and incorrect position that a court enjoining unconstitutional action somehow "violates the Constitution by interposing the court into the internal management of the Executive Branch in a novel contravention of the separation of powers." Br. 2.

First, executive orders *can be* justiciable. *Contra* Br. 9. Lawsuits "to enjoin unconstitutional actions by state and federal officers" are "the creation of courts of equity, and reflect[] a long history of judicial review of illegal executive action . . . ." *Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. 320, 327 (2015)."[I]t is emphatically the province and duty of the judicial department to say what the law is," and while "[t]his 'duty will sometimes involve the resolution of litigation challenging the constitutional authority of one of the three branches, . . . courts cannot avoid their responsibility.'" *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 587 (4th Cir. 2017) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803) & *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012)). Executive orders are subject to constitutional review. *Id.* And challenges raising "purely legal questions," like this case, are "presumptively fit for judicial review." *Chamber of Com. of U.S. v. Reich*, 57 F.3d 1099, 1100 (D.C. Cir. 1995).

The suggestion that courts categorically may not review the President's orders to his subordinates contravenes an unbroken chain of precedent, going back to *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). That the President claims his directions were to "deploy existing legal authorities," Br. 7, makes no difference; this and other courts have held executive action unconstitutional under those circumstances before. *E.g.*, *HIAS, Inc. v Trump*, 985 F.3d 309, 315 (4th Cir. 2021) (enjoining enforcement where President directed Secretary of State to act pursuant to authority under the Refugee Act); *Youngstown*, 343 U.S. at 587 (President purported to act pursuant to the Take Care clause); *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1239 (9th Cir. 2018) (President purported to enforce compliance with 8 U.S.C. § 1373). This is especially so when the Executive Orders "as written, [are] not merely an internal directive but … intended to have the full force of the law." *Cty. of Santa Clara v. Trump*, 275 F.Supp.3d 1196, 1212 (N.D. Cal. 2017) *aff'd in part and vacated in part on other grounds* at 897 F.3d 1225 (9th Cir. 2018). Holding otherwise would require "a construction so narrow that it renders a legal action legally meaningless[,] [which] cannot possibly be reasonable and [would be] clearly inconsistent with the Executive Order's broad intent." *Id*.

Second, savings clauses do not automatically cure constitutional problems. The Government cannot "immunize [the President's] Order[s] from scrutiny,"

*HIAS*, 985 F.3d at 325, by claiming its implementation "directs termination only as 'allowed by law,'" Br. 13, "deter[s] only 'illegal discrimination'" Br. 16, or "requires entities to acknowledge their existing obligations under already 'applicable Federal anti-discrimination laws." Br. 25. In *HIAS*, this Court struck down enforcement of an executive order that claimed to give states and municipalities "veto" rights over the resettlement of refugees into their communities—unless doing so would be "inconsistent with the policies and strategies established under" the Refugee Act or other laws. 985 F.3d at 324. But this Court refused to excuse the order's conflict with the Refugee Act based on "a purely theoretical savings clause, with no method or standard for invoking it, the application of which would undermine the [substantive provisions of the Executive Orders]." *Id.* at 325; *see also City & Cty. of San Francisco*, 897 F.3d at 1239–40 (declining to give effect to a savings clause where that clause "in [] context" would "override clear and specific language," and render "judicial review a meaningless exercise").

The Certification and Enforcement Threat Provisions each include at least one savings clause that, if applied, would directly undermine the unambiguous command and purpose of the Executive Orders. *See, e.g.*, J21 Order, §3(b)(iv)(B), Certification Provision (purportedly limiting ban on "promoting DEI" to violations of federal antidiscrimination laws); *see also* J21 Order §4(b)(iii), Enforcement

Threat Provision (targeting programs "that constitute illegal discrimination"); J21 Order §7(b) (claiming that Order "does not prevent [Plaintiffs or others similarly situated] from engaging in First Amendment-protected speech").[4] Therefore, the savings clauses in both the Certification and the Enforcement Threat Provisions "nullify the clear and specific" substance of the Executive Orders. Moreover, unlike the *HIAS* Executive Order's savings clause, which actually referenced the Refugee Act, the Executive Orders here don't reference any specific law, making them even less defensible.

## II. The Government Will Not Suffer Irreparable Harm.

The Government cannot show irreparable harm from the injunction. *First*, it is not harmed by being unable to "enforce[e] restrictions likely to be found unconstitutional." *Leaders of a Beautiful Struggle v Baltimore Police Dept.*, 2 F.4th 330, 346 (4th Cir. 2021) (cleaned up). *Second*, the Government's invocation of amorphous Separation of Powers and administrative harms, made without citation to any authority, Br. 25-26, finds no support in the relevant precedents. *See also supra* § I; *Long v. Robinson*, 432 F.2d 977, 980 (4th Cir. 1970) (affording

---

[4] Unlike the Certification and Enforcement Threat Provisions which purport to limit their reach to "illegal" DEI and DEIA, the Termination Provision targets *all* "equity-related" grants. The restriction here is that these awards may be terminated only "to the maximum extent of the law," which is a meaningless qualifier and is not how agencies have interpreted the Provision.

little weight to "economic and administrative impact on defendants"); *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 387 (6th Cir. 2008) (similar).

Because Plaintiffs have demonstrated a strong likelihood of success on the merits, *see supra* § I, and the Government suffers no irreparable harm from being enjoined from carrying out its likely unconstitutional actions, the analysis ends there: the Government has failed to satisfy the two "most critical" stay factors. *Nken*, 556 U.S. at 434.

### III. The Public Interest and Irreparable Harm to Plaintiffs Disfavor the Government's Extraordinary Request for a Stay.

The remaining *Nken* factors—the public interest and the effects of a stay on Plaintiffs—militate against a stay. "[I]t is well-established that the public interest favors protecting constitutional rights." *Beautiful Struggle*, 2 F.4th at 346. Absent the preliminary injunction, Plaintiffs will be irreparably harmed by unconstitutional infringements on their First Amendment rights and by severe losses that threaten their operations and existence.

The District Court did not abuse its discretion either time it held that Plaintiffs will suffer irreparable harm absent the preliminary injunction. ADD.55-58; ADD.124-25. "The prospect of an unconstitutional enforcement 'supplies the necessary irreparable injury,'" *PFLAG*, 2025 WL 685124, at *28 (cleaned up) (quoting *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 103 (4th Cir. 2022)), and "loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury."

*Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (cleaned up). The District Court found Plaintiffs had "shown a likelihood of success on their constitutional claims, and thus irreparable injury." ADD.59. Staying or narrowing the preliminary injunction would further chill First Amendment protected speech, of Plaintiffs and others similarly situated, for fear that this speech could lead to severe retaliation from government agencies enforcing the Enjoined Provisions. *See* ADD.59, 64. No final judgment could rectify that harm. ADD.55.

Moreover, Defendants concede that "economic injuries severe enough to threaten Plaintiffs' existence, if shown, are irreparable." ADD.60; *see also Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 218 (4th Cir. 2019). The District Court did not abuse its discretion when it reviewed the factual record—which the Government did not question—and concluded that "Plaintiffs have shown that the [Enjoined] Provisions threaten the livelihoods of numerous of Plaintiffs' members and NADOHE's existence." *See* ADD.60 (addressing severe economic harm to all Plaintiffs). The Government does not meaningfully address either form of irreparable harm, or the District Court's finding that the "balance of equities tips strongly in Plaintiffs' favor." ADD.63; *see also* ADD.124.

## IV. The Scope of Relief Is Necessary and Appropriate

The District Court did not abuse its discretion when it determined the injunction should apply to similarly situated non-parties. ADD.63-64. Orders like this one, enjoining a "categorical policy," are appropriate where "the facts would not require different relief for others similarly situated to the plaintiffs." *HIAS*, 985 F.3d at 326; *see also* ADD.64 (recognizing the Enjoined Provisions are unlawful as to "all contractors and grantees who are subject to them" and "chill speech as to anyone the government might conceivably choose to accuse of engaging in [disfavored] speech"); *see also* A.A.7 (clarifying enforcement of the Enjoined Provisions is unlawful by any "federal executive branch agencies, department, and commissions" because otherwise those affected would be denied "complete relief" and face "inequitable treatment") (citing *CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 654902, at *1 (4th Cir. 2025)).

The Government's suggestion that the injunction "cannot be reconciled with this Court's precedent," Br. 28, is simply incorrect. Their argument relies on two unpersuasive cases: An overruled case that, despite partially staying an injunction, acknowledged "[n]ationwide injunctions are appropriate to afford relief to the prevailing party";[5] and a Supreme Court case narrowing an existing injunction that

---

[5] *Virginia Soc'y for Hum. Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001), *subsequently overruled*.

"prohibited [] enforcing *any* provision of the [challenged] law under *any* circumstances during the life of the parties' litigation," including provisions that did not affect plaintiffs.[6] *See also* ADD.127-28 (distinguishing *Labrador*). Just two weeks ago, this Court reiterated —in a case involving, as here, "organizations with . . . members nationwide"— that where categorical policies exist, a district court may appropriately find an injunction limited to the parties "unworkable" because it would not "provide complete relief to the plaintiffs." *CASA*, 2025 WL 654902, at *1. The District Court rightly acknowledged this Circuit's "squarely applicable caselaw [that] support[s] the injunction as entered." ADD.123; *see also* ADD.125 (citing *HIAS* in denying Defendants' request to limit injunction via stay); *see also* *PFLAG*, 2025 WL 685124, at *30 (categorically enjoining executive order provisions where "organizational plaintiffs suing on behalf of their members" were "located throughout the country," the basis of the provisions' unconstitutionality were "applicable to jurisdictions throughout the country," and where a "piecemeal

---

[6] *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024). The injunction here leaves all aspects of the J20 and J21 Orders intact, except for those provisions challenged by Plaintiffs for which they have identified specific irreparable harm. *See Roe v. Dep't of Def.*, 947 F.3d 207, 232 (4th Cir.) (affirming nationwide injunction protecting plaintiffs and others "similarly situated" where the district court "tailored the injunction to the issues presented in the case, imposed a narrow injunction focused on the Air Force's challenged actions, and articulated its reasons for imposing the injunction").

approach [was] not appropriate" as "it would result in "[s]ignificant confusion"");

*Roe*, 947 F.3d at 231 (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellees respectfully request that the

Court deny the Government's motion for stay pending appeal.

Date: March 10, 2025

Niyati Shah
Noah Baron*
Alizeh Ahmad*
**Asian Americans Advancing
Justice|AAJC**
1620 L Street NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
aahmad@advancingjustice-aajc.org

* motion for admission forthcoming

Respectfully submitted,

*/s/Ananda V. Burra*
Ananda V. Burra
Aleshadye Getachew
Audrey Wiggins
Brooke Menschel
J. Sterling Moore
Orlando Economos
Skye Perryman
**Democracy Forward Foundation**
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
aburra@democracyforward.org
agetachew@democracyforward.org
awiggins@democracyforward.org
bmenschel@democracyforward.org
smoore@democracyforward.org
oeconomos@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because this motion contains 5,125 words, excluding the parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B).

2.      This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: March 10, 2025                    */s/Ananda V. Burra*
                                          *Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2025, I electronically filed the foregoing *Response in Opposition to Motion for Stay Pending Appeal* with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: March 10, 2025　　　　　　　　　　　　*/s/Ananda V. Burra*

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiffs-Appellees*

**APPELLEES' ADDENDUM**

# TABLE OF CONTENTS

**Relevant Record Materials, pursuant to Fed. R. App. P.
  8(a)(2)(B)(iii) and Local Rule 8**

Memorandum Opinion (March 10, 2025) (Dkt. No. 66) ..............................  A.A. 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION OF
DIVERSITY OFFICERS IN HIGHER
EDUCATION, *et al.*,

     *Plaintiffs*,

  v.

DONALD J. TRUMP, *et al.*,

     *Defendants*

Case No. 25-cv-0333-ABA

## MEMORANDUM OPINION

The Court entered a Preliminary Injunction on February 21, 2025. ECF No. 45. The Preliminary Injunction described the "Enjoined Parties" as "Defendants other than the President, and other persons who are in active concert or participation with Defendants." *Id.* ¶ 3. Defendants, as identified in Plaintiffs' complaint, are President Trump in his official capacity, the Office of Management and Budget, the Departments of Justice, Health and Human Services, Education, Labor, Interior, Commerce, Agriculture, Energy, and Transportation along with the heads of those agencies (in their official capacities), and the National Science Foundation.

Plaintiffs have filed a motion seeking "clarification" on whether the "Enjoined Parties" include federal executive agencies, departments, and commissions (and their subdivisions, agents, and officers) that are not named as defendants in this case. ECF No. 50-1 ("Clarification Motion") at 3. Defendants oppose the motion and argue that (1) the Court lacks jurisdiction to consider the Clarification Motion because Defendants have filed a notice of appeal; and (2) Plaintiffs' interpretation, or requested clarification, of the Preliminary Injunction is inconsistent with Federal Rule of Civil Procedure 65(d),

A.A.1

Article III of the U.S. Constitution, and traditional principles of equity and the principles underlying preliminary injunctive relief. *See* ECF No. 62.

For the reasons set forth below, the Court will grant the Clarification Motion. The Court clarifies, pursuant to Federal Rule of Civil Procedure 65(d)(2)(B), as follows and as set forth in the accompanying Clarified Preliminary Injunction (March 10, 2025) at paragraph 3:

> The Preliminary Injunction applies to and binds Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions directed pursuant to the J20 and J21 Orders (collectively, the "Enjoined Parties").

## I.    JURISDICTION

Generally, the timely filing of a notice of appeal transfers jurisdiction to the court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014). An exception to this general rule is when the district court "take[s] action that aids the appellate process." *Pub. Citizen*, 749 F.3d at 258 (citing *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991)). Under this exception, a district court may modify an injunction to clarify it in order to "reliev[e] [the appellate court] from considering the substance of an issue begotten merely from imprecise wording in the injunction." *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001).

In *Lytle*, while an appeal was pending, the district court replaced a reference to "the Commonwealth" to specify who was covered by the injunction (there, the Governor of the Commonwealth of Virginia, and the Norfolk Commonwealth Attorney). *Id.*

A.A.2

Similarly, in *Dixon v. Edwards*, the Fourth Circuit held that, while an appeal was pending, the district court could modify an injunction barring an individual from "officiat[ing] at religious services on or near the grounds" of a church by revising the order to specify that the individual was "permitted to conduct religious services at least 300 feet distant from the perimeter" of the church. 290 F.3d 699, 709 & n.14 (4th Cir. 2001).

Here, Plaintiffs do not request a substantive amendment to the Preliminary Injunction, but rather a clarification regarding which agencies are encompassed among "Enjoined Parties." The requested clarification is comparable to the modified orders in *Lytle* and *Dixon*. Further, as explained below, the Court's Memorandum Opinion that accompanied the Preliminary Injunction cited actions by agencies that were not named as defendants to explain the rationale for the Preliminary Injunction, and thus clarification is further justified, and serves to "aid[] the appellate process," *Pub. Citizen*, 749 F.3d at 258, "in light of a potential inconsistency between the language of the Preliminary Injunction and that of the accompanying Memorandum Opinion." *See Am. Coll. of Obstetricians and Gynecologists ex rel. Council of Univ. Chairs of Obstetrics & Gynecology v. U.S. Food & Drug Admin.*, No. 20-cv-1320-TDC, 2020 WL 8167535, at *1 (D. Md. Aug. 19, 2020). Therefore, this Court may rule on the Clarification Motion and clarify the terms of the Preliminary Injunction.[1]

---

[1] Because the clarified preliminary injunction replaces the "in active concert or participation" language from the February 21, 2025 order with clearer wording consistent with the Court's February 21, 2025 memorandum opinion, the Court need not reach the issues raised by the parties as to what would render a non-named federal executive agency "in active concert or participation" with a named Defendant.

3

A.A.3

## II.    CLARIFICATION

Plaintiffs' complaint challenges as facially unconstitutional three executive order provisions, set forth in the Preliminary Injunction and referred to therein as the Termination Provision, Certification Provision, and Enforcement Threat Provision. ECF No. 45 ¶ 2. As the Court explained in its February 21 Memorandum Opinion, those provisions run afoul of the free speech protections of the First Amendment, and the due process protections of the Fifth Amendment, and do so on their face. ECF No. 44 at 38-55.

Defendants acknowledge that the President was a named defendant in this case; that the Challenged Provisions were directives to all executive agencies, departments, and commissions; and that the Court has held that those directives are unconstitutional on their face. ECF No. 62 at 3. Nonetheless, Defendants argue that the Court should only preliminarily enjoin the actions of the specific departments, agencies and commissions that Plaintiffs named as *additional* defendants. *Id*. at 14. They argue that including other departments, agencies and commissions that are under the President's direction, and were in fact directed by the Challenged Provisions, is inconsistent with Article III's standing requirement because it would bind "nonparties who would [otherwise] not be bound by the judgment." *Id*. at 13 (citing *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023)). Defendants similarly argue that this kind of injunction is inconsistent with traditional principles of equity and preliminary injunctive relief. *Id*.

The Court has previously explained why this is the proper scope of an injunction given the claims, the nature of the challenged provisions, and the ways in which Plaintiffs have shown a likelihood that the provisions are facially unconstitutional. *See*

A.A.4

ECF No. 44 at 60-62; ECF No. 61 at 10. To reiterate and further explain, there are three principal reasons.

First, Plaintiffs have shown a likelihood of success on the merits that the Termination and Certification Provisions, and the Enforcement Threat Provision in part, on their face constitute unlawful content-based and viewpoint-discriminatory restrictions on speech in violation of the First Amendment, and on their face also run afoul of due process because of their vagueness. ECF No. 44 at 38-55; *see also* ECF No. 61 at 1-2 (order denying stay pending appeal). In particular, the Court held that Plaintiffs have shown a likelihood of success on the merits as follows:

- The Termination Provision, as to which Plaintiffs brought facial challenges under the Spending Clause (Count 1) and the Fifth Amendment (Count 2), "invites arbitrary and discriminatory enforcement" and "offers insufficient notice to current grantees about whether and how they can adapt their conduct to avoid termination of their grants or contracts," and in so doing facially violates the "'more stringent vagueness test'" that applies when a law "'interferes with the right of free speech or of association.'" ECF No. 44 at 38-39 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

- The Certification Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 5) and separation of powers (Count 6), "operates as a facially viewpoint-discriminatory order," "constitutes a content-based restriction on the speech rights of federal contractors and grantees . . . because such restriction expands to all of those contractors' and grantees work, whether funded by the government or not," and also "unconstitutionally

A.A.5

restricts, and retaliates against, contractors' and grantees' free speech rights even within the scope of the pertinent programs." *Id.* at 45 & 47-48.

- The Enforcement Threat Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 4) and Fifth Amendment (Count 3), violates the First Amendment because it "threatens . . . enforcement actions" using "a content-based restriction on protected speech that would not pass the high bar of strict scrutiny" and further constitutes an "unlawful viewpoint-based restriction on protected speech." *Id.* at 50, 52. And it violates the Fifth Amendment because, among other things, while "rescind[ing] swaths of existing executive branch guidance on what the executive branch considers the federal civil rights laws to require, prohibit, or allow," it gives no "guidance on what the new administration considers to constitute 'illegal DEI discrimination and preferences,' J21 Order § 4(b)(iv), or '[p]romoting diversity,' *id.* § 3(b)(ii), or 'illegal DEI and DEIA policies,' *id.* § 1, or what types of 'DEI programs or principles' the new administration considers 'illegal' and is seeking to 'deter,' *id.* § 4(b)(iii)." *Id.* at 53-54.

Each of those ways in which Plaintiffs have shown that the Challenged Provisions are unconstitutional are deficiencies with those provisions on their face. Any executive agency, department or commission acting pursuant to the Challenged Provisions would be acting pursuant to an order that Plaintiffs have shown a strong likelihood of success in establishing is unconstitutional on its face.

Second, the Termination and Certification Provisions are directives the President issued to *all* executive agencies, departments and commissions, J20 Order § 2(a)(i); J21 Order § 3(b)(iv), and the Enforcement Threat Provision was an express directive by the

6

A.A.6

President to the Department of Justice. J21 Order § 4(b)(iii). Defendants named in

Plaintiffs' complaint include the President in his official capacity. ECF No. 1 ¶ 22. The

Preliminary Injunction—both original and as clarified—is tailored to the executive

branch agencies, departments and commissions that were directed, and have acted or

may act, pursuant to the President's directives in the Challenged Provisions of the J20

and J21 Orders. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561

U.S. 477, 513-14 (2010) (holding that the President is responsible and accountable for

executive agencies that are executing the laws); *Seila Law LLC v. Consumer Fin. Prot.*

*Bureau*, 591 U.S. 197, 203-204 (2020) (same).

    Third, enjoining only the agencies that Plaintiffs specifically named, and ignoring

the fact that the President (who issued the Challenged Provisions) is a named defendant,

would fail to provide complete relief to Plaintiffs and their members themselves

because, among other things, they are at risk of their speech being chilled by many non-

named federal executive agencies, as Plaintiffs explain. ECF No. 65 at 13. Artificially

limiting the preliminary injunction in the way Defendants propose also would make the

termination status of a federal grant, or the requirement to certify compliance by a

federal contractor, turn on which federal executive agency the grantee or contractor

relies on for current or future federal funding—even though the agencies would be

acting pursuant to the exact same Challenged Provisions—thereby "causing 'inequitable

treatment' in an area in which uniformity is needed." *CASA, Inc. v. Maribel*, No. 25-

1153, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025) (quoting *Roe v. Dep't. of Defense*,

947 F.3d 207, 231-32 (4th Cir. 2020) and *HIAS, Inc. v. Trump*, 985 F.3d 309, 326-27

(4th Cir. 2021)).

### III.    CONCLUSION

For these reasons and those previously articulated, the Court will issue a separate order clarifying that the Preliminary Injunction, consistent with the Court's reasoning in the February 21, 2025 Memorandum Opinion, applies as follows:

> The Preliminary Injunction applies to and binds Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions directed pursuant to the J20 and J21 Orders (collectively, the "Enjoined Parties").

Date:  March 10, 2025

_____/s/_____
Adam B. Abelson
United States District Judge

A.A.8