IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| NATIONAL ASSOCIATION OF DIVERSITY OFFICERS IN HIGHER EDUCATION, et al., | |
| Plaintiffs-Appellees, | |
| v. | No. 25-1189 |
| DONALD J. TRUMP, et al., | |
| Defendants-Appellants. | |

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

Plaintiffs' response highlights the need for a stay. Plaintiffs press novel and far-reaching legal theories, while ignoring the plain limits of the cases they cite and the plain text of the Executive Orders they challenge. For example, plaintiffs rely on cases evaluating prohibitions on private conduct for constitutional vagueness—but none of the challenged provisions imposes new restrictions on private conduct. And they rely on cases involving restrictions on protected speech or leveraging government benefits to achieve such restrictions—but, again, the challenged provisions do no such thing.

The district court, for its part, has now held that its injunction applies not only to defendants, but to nonparty agencies across the entire Executive Branch—to every agency, department, commission, officer, and agent of the federal government, regardless of whether they were named as a defendant in this suit. The court has thus dropped any pretense of resolving a discrete case or controversy and made plain its intention to oversee broad swaths of federal action and funding by replacing the President's directions to federal agencies with the court's own judgments. Its sweeping injunction cannot be reconciled with basic Article III principles, the separation of powers, or established First and Fifth Amendment doctrine, and therefore must be immediately stayed.

## ARGUMENT

## I. The Executive Orders Are Consistent with the First and Fifth Amendments.

The court erred in determining that plaintiffs were likely to succeed in challenging the Termination Provision under the Fifth Amendment, the Certification Provision under the First Amendment, and the Report Provision under both. Plaintiffs' efforts to defend the court's decision only underscore the multiple errors in its analysis.

## A. The Termination Provision is not unconstitutionally vague.

The Termination Provision directs executive agencies to "terminate, to the maximum extent allowed by law, all … 'equity-related' grants or contracts." Exec. Order. No. 14,151, § 2(b)(i), 90 Fed. Reg. 8339, 8339 (Jan. 20, 2025). The district court's conclusion that the term "equity-related" was unconstitutionally vague replicates the analysis that the Supreme Court rejected in *National Endowment for the Arts v. Finley*, 524 U.S. 569, 588-89 (1998). There, the Supreme Court upheld against a vagueness challenge grants awarded according to "artistic excellence and artistic merit … , taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public," 20 U.S.C. § 954(d)(1). *Finley*, 524 U.S. at 588-89. Although the standards were "undeniably opaque," the Court declined to render unconstitutional "all Government programs awarding scholarships and grants on the basis of subjective criteria such as 'excellence.'" *Id.* While "speakers are protected from arbitrary and discriminatory enforcement of vague standards," the Court explained, "when the Government is acting as patron rather than as

sovereign, the consequences of imprecision are not constitutionally severe." *Id.*

Thus, if the President directs his subordinates to terminate grants that are not "excellent," there is no vagueness problem, even if "as a practical matter," putative grantees "may conform ... to what they believe to be the decisionmaking criteria in order to acquire funding." *Finley*, 524 U.S. at 588-89. A directive to terminate "equity-related" grants creates no greater constitutional problem.

Plaintiffs assert that it is "well established" that laws must provide "'fair notice of what is prohibited.'" Opp'n 7 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)); *see also FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012) (broadcasters entitled to notice of scope of criminal statute); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) (evaluating constitutionality of municipal ordinance). That is true, but irrelevant. The Termination Provision is not a law, and it does not prohibit private conduct; it merely reflects the government's own determinations about how to exercise its authority.

**B. The Report Provision complies with the Fifth and First Amendments.**

Even plaintiffs do not suggest that it is unconstitutional for the President to direct a subordinate to prepare a report reflecting the President's general enforcement priorities. They instead base their challenge to the Report Provision on conjectures about potential future enforcement actions. These speculative assertions fall well short of establishing a justiciable case or controversy, *see* Mot. 15-17; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411 (2013), let alone meritorious claims.

1. Plaintiffs' Fifth Amendment challenge fails at the outset because the vagueness doctrine does not govern the President's instructions to subordinates. As explained, the Report Provision does not regulate private conduct; rather, it contemplates the development of a plan for enforcing civil rights laws, which plaintiffs do not contend are unconstitutionally vague.

The government's argument is not, as plaintiffs suggest, that "presidential directives cannot be subject to constitutional vagueness standards," Opp'n 7, but rather that "a presidential policy directive *to federal officers* is not subject to constitutional vagueness standards," Mot. 11

(emphasis added). The relevant point is that vagueness standards only apply to provisions to which private parties must conform their conduct. The cases on which plaintiffs rely do not suggest otherwise. *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521, 543-44 (N.D. Cal. 2020) (vagueness challenge to provisions with which government contractors were required to comply on pain of penalties); *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133 (9th Cir. 2009) (upholding, against vagueness challenge, Executive Order banning providing services to certain organizations). And *Lumumba v. Kiser*, 116 F.4th 269 (4th Cir. 2024), which assumed without deciding that the vagueness doctrine applied to a prison regulation, *id.* at 284 n.10, merely highlights that the doctrine applies to laws that regulate private conduct and not to directives within the Executive Branch.

Plaintiffs are wrong to suggest that even if the relevant antidiscrimination laws are not vague, a vagueness problem arises if they do not understand the government's enforcement policies. To the contrary, the Supreme Court has held that there is no articulable standard at all for evaluating an agency's exercise of enforcement discretion. *See Heckler v. Chaney*, 470 U.S. 821, 831-32, 834-35 (1985) (holding that there is "no law to

apply" in assessing enforcement priorities and that such decisions are "committed to agency discretion by law"); *see also United States v. Texas*, 599 U.S. 670, 679 (2023) ("[C]ourts generally lack meaningful standards for assessing the propriety of [Executive Branch] enforcement choices."). The government's discretion to determine on a case-by-case basis whether to enforce the law has never been regarded as a constitutional problem.

Moreover, plaintiffs make no effort to demonstrate that the provision is "impermissibly vague in all of its applications," *Village of Hoffman v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982), as would be necessary to sustain a facial challenge even against a prohibitory provision. *See Maynard v. Cartwright,* 486 U.S. 356, 361 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.").

2. Plaintiffs' First Amendment claim against the Report Provision is likewise meritless. It is unclear what plaintiffs mean when they assert that "they have historically engaged in protected speech on DEI that could now be termed unlawful and chilled." Opp'n 12. "[P]rotected speech" would not constitute unlawful discrimination, and the Executive Order expressly

"does not prevent" anyone "from engaging in First Amendment-protected speech." EO 14,173 § 7(b). Plaintiffs' speculation about enforcement actions beyond the bounds of the Executive Order or any other directive provides no basis for an injunction.

The cases on which plaintiffs rely do not suggest otherwise. Several merely establish the longstanding, but inapposite, principle that the government may not provide coercive incentives, positive or negative, for speech outside the purview of the relevant government program. *See Keyishian v. Board of Regents*, 385 U.S. 589 (1967) (state universities may not condition continued employment on speech or associations outside the employment context); *Perry v. Sindermann*, 408 U.S. 593 (1972) (same); *Speiser v. Randall*, 357 U.S. 513 (1958) (states may not deny tax deduction for refusal to take an oath). Nothing about these cases suggests that it is unconstitutional for the government to prohibit federal grantees from violating federal civil rights laws.

Other cases stand for the general "principle that a government official cannot do indirectly what she is barred from doing directly." *National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). But the government is entitled, directly, to enforce the civil rights laws against unlawful conduct.

The Executive Orders do not contemplate using such enforcement actions to pursue some other goal, much less one related to protected speech.

## C. The Certification Provision likewise complies with the First Amendment.

Plaintiffs do not contend that it is unconstitutional to require recipients of federal funds to certify compliance with existing federal laws, nor could they. But that is all the Certification Provision does. And while the provision addresses unlawful DEI programs specifically — a subset of the potential ways in which federal funding recipients might violate antidiscrimination law — that limitation merely renders it narrower than scores of certifications wherein recipients of federal assistance attest that they comply with Title VI in every respect. Plaintiffs neither argue that these longstanding requirements are unconstitutional nor explain why their breadth is constitutionally required.

The district court's First Amendment analysis was based on an incorrect assumption that plaintiffs do not even attempt to defend — that the False Claims Act permits liability for good-faith but incorrect interpretations of law. As previously explained, the court wrongly concluded that the Certification Provision essentially required plaintiffs to

"guess whether they are in compliance with the administration's as-yet-unpromulgated guidance on what constitutes … 'illegal … DEI,'" subjecting themselves to False Claims Act liability "if they miss the mark." Mot. 23 (alterations in original) (quoting ADD.58).

When this incorrect assumption is stripped away, little remains of the court's analysis. Plaintiffs observe that the court "held that [they] demonstrated likely success on the merits because an ordinary person would be 'highly likely to chill their own speech—to self-censor, and reasonably so—because of the Certification Provision,'" Opp'n 9-10 (quoting ADD.50), all to "avoid risking liability" under the False Claims Act, ADD.50. But the False Claims Act threatens no liability for recipients who certify in good faith that their DEI programs comply with federal law. Mot. 23-24.

Plaintiffs do not grapple with this fundamental error in the court's analysis but instead assert that in one instance an agency allegedly imposed requirements beyond the terms of the Executive Order. Opp'n 9. A suggestion that an agency has acted beyond the scope of the Executive Order cannot establish that the Order itself is unlawful, much less unlawful on its face. It is relevant only insofar as it highlights that plaintiffs seek not

to challenge the implementation of particular Executive Orders but instead to superintend a wide swath of Executive Branch conduct, as discussed in more detail below. *See infra* pt. III.

## II. The Remaining Equitable Factors Favor the Government.

Plaintiffs' arguments regarding the remaining equitable factors are largely derivative of their erroneous merits arguments. Plaintiffs have no constitutional right to receive federal funding that is not required by law and that is inconsistent with the President's policies. And plaintiffs fail to seriously contend with the intrusion on the Executive Branch and the separation of powers occasioned by the court's sweeping injunction.

## III. The Court's "Clarification" Highlights the Errors in the Injunction and Its Overbreadth.

The district court recently "clarified" its order in a manner that underscores the order's infirmities, both on the merits and in the scope of relief. The court stated that its injunction "applies to and binds Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions." SUPP.ADD.3. So the injunction now bars

nondefendants from taking actions against nonplaintiffs, making it unprecedentedly overbroad.

**A. The court was not resolving any concrete case or controversy.**

By extending its ruling beyond the parties properly before it—especially to *defendants* not before it—the court entered an injunction bearing little relationship to any concrete case or controversy. Courts are empowered to resolve disputes between specific parties, not to supervise the entire federal government. But the injunction here is untethered to any concrete agency action challenged by plaintiffs; it instead assumes a sweeping mandate to interfere with core executive functions and frustrate the President's ability to direct his subordinates. Article III permits no such injunction.

It is unclear why the court even bothered to mention the defendants in an injunction that "applies to and binds Defendants … as well as all other federal executive branch agencies," SUPP.ADD.3. The court was explicit that it was overseeing the entire Executive Branch. Unsurprisingly, this action defies binding precedent. In *Lujan v. Defenders of Wildlife*, for instance, the Supreme Court observed that an injury attributable to certain federal agencies was not redressable because these particular agencies were

not parties to the case. 504 U.S. 555, 568 (1992) (plurality opinion); *see also Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) (reaffirming this principle and stating that an injunctive or declaratory judgment entered against a nonparty is not "legally enforceable" and "is little more than an advisory opinion"). That conclusion followed from the unremarkable proposition that the district court "could accord relief only against" the actual defendant. *Lujan*, 504 U.S. at 568. As for the other agencies, "[t]hey were not parties to the suit, and there is no reason they should be obliged to honor an incidental legal determination the suit produced" with respect to the defendant agency. *Id.* at 569.

## B. The district court's misconception of the scope of the dispute infected every facet of its analysis.

The district court's assertion that its injunction binds the entire Executive Branch was not merely an isolated overstep—it is the clearest manifestation of its improper intrusion into the affairs of the Executive Branch. As discussed above, plaintiffs defend the injunction not based on the text of the challenged Executive Orders but rather based on disparate agency actions that they have not properly challenged in this litigation. They speculate about how agencies might react to the Executive Orders

because they cannot identify any legal defect in the actions that the Executive Orders expressly contemplate: termination, to the extent consistent with law, of grants that are inconsistent with the President's policy priorities; enforcement of antidiscrimination laws in keeping with the President's enforcement priorities; and a certification of compliance with antidiscrimination laws with which recipients of federal funds have been bound for decades to comply.

The court's injunction thus must be stayed in its entirety. But at an absolute minimum, a stay is warranted insofar as the injunction purports to extend beyond the parties to this case. As noted above, there is no basis for extending relief to the entire Executive Branch. And as to relief beyond plaintiffs, even the case on which plaintiffs rely highlights that courts "must ensure that a preliminary injunction is no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021) (quotation marks omitted). Plaintiffs make no attempt to explain why their relief would be incomplete if the government were still permitted to terminate the grants of nonparties, require nonparties to certify their compliance with federal law, or bring enforcement actions against nonparties.

## CONCLUSION

For the foregoing reasons and those in our motion, this Court should stay the district court's preliminary injunction or, at a minimum, issue a partial stay to limit relief to the plaintiffs and named defendants.

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
JACK STARCHER

*s/ Catherine Padhi*

CATHERINE PADHI
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Ave., NW, Room 7712*
*Washington, DC 20530*
*catherine.m.padhi@usdoj.gov*

MARCH 2025

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion satisfies the type-volume requirements set out in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2594 words. This motion was prepared using Microsoft Word in Book Antiqua, 14-point font, a proportionally spaced typeface.

*s/ Catherine Padhi*
Catherine Padhi

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2025, I electronically filed the
foregoing with the Clerk of the Court by using the appellate CM/ECF
system. Participants in the case are registered CM/ECF users and service
will be accomplished by the appellate CM/ECF system.

_s/ Catherine Padhi_
Catherine Padhi

# SUPPLEMENTAL ADDENDUM

# TABLE OF CONTENTS

**Relevant Record Materials, pursuant to Fed. R. App. P. 8(a)(2)(B)(iii) and Local Rule 8**

Clarified Preliminary Injunction (March 10, 2025) (Dkt. No. 67) .......................................................................SUPP.ADD.1

Memorandum Opinion (March 10, 2025) (Dkt. No. 66) .............SUPP.ADD.5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NATIONAL ASSOCIATION OF DIVERSITY OFFICERS IN HIGHER EDUCATION, *et al.*, | |
|     *Plaintiffs*, | |
|   v. | Case No. 1:25-cv-00333-ABA |
| DONALD J. TRUMP, *et al.*, | |
|     *Defendants* | |

**CLARIFIED PRELIMINARY INJUNCTION (March 10, 2025)[1]**

Pursuant to Federal Rule of Civil Procedure 65, and upon consideration of the Motion for a Temporary Restraining Order and/or Preliminary Injunction filed by Plaintiffs National Association of Diversity Officers in Higher Education, the American Association of University Professors, Restaurant Opportunities Centers United, and the Mayor and City Council of Baltimore, Maryland (ECF No. 27) (the "Preliminary Injunction Motion"), Defendants' memorandum in opposition (ECF No. 35),[2] Plaintiffs' reply brief (ECF No. 39), and the exhibits to those submissions; having held a hearing on the Preliminary Injunction Motion on February 19, 2025; having also considered

---

[1] For the reasons set forth in the accompanying Memorandum Opinion, the Court is issuing this order to clarify the scope of the preliminary injunction issued on February 21, 2025 (ECF No. 45). The only clarified *operative* language appears in the definition of Enjoined Parties in paragraph 3.

[2] The Defendants named in this action are the Office of Management and Budget, the Departments of Justice, Health and Human Services, Education, Labor, Interior, Commerce, Agriculture, Energy, and Transportation along with the heads of those agencies (in their official capacities), the National Science Foundation, and President Trump in his official capacity.

SUPP.ADD.1

Plaintiffs' Motion to Clarify Preliminary Injunction Order (ECF No. 50) ("Clarification Motion"), Defendants' response (ECF No. 62) and Plaintiffs' reply (ECF No. 65); and for the reasons set forth in the Court's Memorandum Opinion that accompanied the original Preliminary Injunction (ECF No. 44), and the additional reasons set forth in the Memorandum Opinion that accompanies this clarified Preliminary Injunction, it is hereby ORDERED as follows:

1.    The Preliminary Injunction Motion is GRANTED IN PART and DENIED IN PART, and the Clarification Motion is GRANTED.

2.    This Order addresses the following provisions in Exec. Order 14151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, Executive Order of January 20, 2025, 90 Fed. Reg. 8339 (Jan. 29, 2025) (the "J20 Order"), and Exec. Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, Executive Order of January 21, 2025, 90 Fed. Reg. 8633 (Jan. 31, 2025) ("J21 Order"):

J20 Order § 2(b)(i) (in part) (the "**Termination Provision**"):

> Each agency, department, or commission head, in consultation with the Attorney General, the Director of OMB, and the Director of OPM, as appropriate, shall take the following actions within sixty days of this order:
>
> > (i) terminate, to the maximum extent allowed by law, . . . all . . . "equity-related" grants or contracts[.]

J21 Order § 3(b)(iv) (the "**Certification Provision**"):

> The head of each agency shall include in every contract or grant award:
>
> > (A) A term requiring the contractual counterparty or grant recipient to agree that its compliance in all respects with

2

all applicable Federal anti-discrimination laws is material to the government's payment decisions for purposes of section 3729(b)(4) of title 31, United States Code; and

(B) A term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws.

J21 Order § 4(b)(iii) (the "**Enforcement Threat Provision**"):

To further inform and advise me so that my Administration may formulate appropriate and effective civil-rights policy, the Attorney General, within 120 days of this order, in consultation with the heads of relevant agencies and in coordination with the Director of OMB, shall submit a report to the Assistant to the President for Domestic Policy containing recommendations for enforcing Federal civil-rights laws and taking other appropriate measures to encourage the private sector to end illegal discrimination and preferences, including DEI. The report shall contain a proposed strategic enforcement plan identifying

. . . (iii) A plan of specific steps or measures to deter DEI programs or principles (whether specifically denominated 'DEI' or otherwise) that constitute illegal discrimination or preferences. As a part of this plan, each agency shall identify up to nine potential civil compliance investigations of publicly traded corporations, large non-profit corporations or associations, foundations with assets of 500 million dollars or more, State and local bar and medical associations, and institutions of higher education with endowments over 1 billion dollars.

3.      The Preliminary Injunction applies to and binds Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions directed pursuant to the J20 and J21 Orders (collectively, the "Enjoined Parties").

SUPP.ADD.3

4.    The Enjoined Parties shall not:

a.    pause, freeze, impede, block, cancel, or terminate any awards, contracts or obligations ("Current Obligations"), or change the terms of any Current Obligation, on the basis of the Termination Provision;

b.    require any grantee or contractor to make any "certification" or other representation pursuant to the Certification Provision; or

c.    bring any False Claims Act enforcement action, or other enforcement action, pursuant to the Enforcement Threat Provision, including but not limited to any False Claims Act enforcement action premised on any certification made pursuant to the Certification Provision.

Date:  March 10, 2025

_____/s/_____
Adam B. Abelson
United States District Judge

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION OF
DIVERSITY OFFICERS IN HIGHER
EDUCATION, *et al.*,

    *Plaintiffs*,

  v.

DONALD J. TRUMP, *et al.*,

    *Defendants*

Case No. 25-cv-0333-ABA

## MEMORANDUM OPINION

The Court entered a Preliminary Injunction on February 21, 2025. ECF No. 45. The Preliminary Injunction described the "Enjoined Parties" as "Defendants other than the President, and other persons who are in active concert or participation with Defendants." *Id.* ¶ 3. Defendants, as identified in Plaintiffs' complaint, are President Trump in his official capacity, the Office of Management and Budget, the Departments of Justice, Health and Human Services, Education, Labor, Interior, Commerce, Agriculture, Energy, and Transportation along with the heads of those agencies (in their official capacities), and the National Science Foundation.

Plaintiffs have filed a motion seeking "clarification" on whether the "Enjoined Parties" include federal executive agencies, departments, and commissions (and their subdivisions, agents, and officers) that are not named as defendants in this case. ECF No. 50-1 ("Clarification Motion") at 3. Defendants oppose the motion and argue that (1) the Court lacks jurisdiction to consider the Clarification Motion because Defendants have filed a notice of appeal; and (2) Plaintiffs' interpretation, or requested clarification, of the Preliminary Injunction is inconsistent with Federal Rule of Civil Procedure 65(d),

SUPP.ADD.5

Article III of the U.S. Constitution, and traditional principles of equity and the principles underlying preliminary injunctive relief. *See* ECF No. 62.

For the reasons set forth below, the Court will grant the Clarification Motion. The Court clarifies, pursuant to Federal Rule of Civil Procedure 65(d)(2)(B), as follows and as set forth in the accompanying Clarified Preliminary Injunction (March 10, 2025) at paragraph 3:

> The Preliminary Injunction applies to and binds Defendants other than the President, as well as all other federal executive branch agencies, departments, and commissions, and their heads, officers, agents, and subdivisions directed pursuant to the J20 and J21 Orders (collectively, the "Enjoined Parties").

## I.    JURISDICTION

Generally, the timely filing of a notice of appeal transfers jurisdiction to the court of appeals and "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014). An exception to this general rule is when the district court "take[s] action that aids the appellate process." *Pub. Citizen*, 749 F.3d at 258 (citing *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991)). Under this exception, a district court may modify an injunction to clarify it in order to "reliev[e] [the appellate court] from considering the substance of an issue begotten merely from imprecise wording in the injunction." *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001).

In *Lytle*, while an appeal was pending, the district court replaced a reference to "the Commonwealth" to specify who was covered by the injunction (there, the Governor of the Commonwealth of Virginia, and the Norfolk Commonwealth Attorney). *Id.*

SUPP.ADD.6

Similarly, in *Dixon v. Edwards*, the Fourth Circuit held that, while an appeal was pending, the district court could modify an injunction barring an individual from "officiat[ing] at religious services on or near the grounds" of a church by revising the order to specify that the individual was "permitted to conduct religious services at least 300 feet distant from the perimeter" of the church. 290 F.3d 699, 709 & n.14 (4th Cir. 2001).

Here, Plaintiffs do not request a substantive amendment to the Preliminary Injunction, but rather a clarification regarding which agencies are encompassed among "Enjoined Parties." The requested clarification is comparable to the modified orders in *Lytle* and *Dixon*. Further, as explained below, the Court's Memorandum Opinion that accompanied the Preliminary Injunction cited actions by agencies that were not named as defendants to explain the rationale for the Preliminary Injunction, and thus clarification is further justified, and serves to "aid[] the appellate process," *Pub. Citizen*, 749 F.3d at 258, "in light of a potential inconsistency between the language of the Preliminary Injunction and that of the accompanying Memorandum Opinion." *See Am. Coll. of Obstetricians and Gynecologists ex rel. Council of Univ. Chairs of Obstetrics & Gynecology v. U.S. Food & Drug Admin.*, No. 20-cv-1320-TDC, 2020 WL 8167535, at *1 (D. Md. Aug. 19, 2020). Therefore, this Court may rule on the Clarification Motion and clarify the terms of the Preliminary Injunction.[1]

---

[1] Because the clarified preliminary injunction replaces the "in active concert or participation" language from the February 21, 2025 order with clearer wording consistent with the Court's February 21, 2025 memorandum opinion, the Court need not reach the issues raised by the parties as to what would render a non-named federal executive agency "in active concert or participation" with a named Defendant.

SUPP.ADD.7

## II.    CLARIFICATION

Plaintiffs' complaint challenges as facially unconstitutional three executive order provisions, set forth in the Preliminary Injunction and referred to therein as the Termination Provision, Certification Provision, and Enforcement Threat Provision. ECF No. 45 ¶ 2. As the Court explained in its February 21 Memorandum Opinion, those provisions run afoul of the free speech protections of the First Amendment, and the due process protections of the Fifth Amendment, and do so on their face. ECF No. 44 at 38-55.

Defendants acknowledge that the President was a named defendant in this case; that the Challenged Provisions were directives to all executive agencies, departments, and commissions; and that the Court has held that those directives are unconstitutional on their face. ECF No. 62 at 3. Nonetheless, Defendants argue that the Court should only preliminarily enjoin the actions of the specific departments, agencies and commissions that Plaintiffs named as *additional* defendants. *Id*. at 14. They argue that including other departments, agencies and commissions that are under the President's direction, and were in fact directed by the Challenged Provisions, is inconsistent with Article III's standing requirement because it would bind "nonparties who would [otherwise] not be bound by the judgment." *Id*. at 13 (citing *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023)). Defendants similarly argue that this kind of injunction is inconsistent with traditional principles of equity and preliminary injunctive relief. *Id*.

The Court has previously explained why this is the proper scope of an injunction given the claims, the nature of the challenged provisions, and the ways in which Plaintiffs have shown a likelihood that the provisions are facially unconstitutional. *See*

SUPP.ADD.8

ECF No. 44 at 60-62; ECF No. 61 at 10. To reiterate and further explain, there are three principal reasons.

Further, Plaintiffs have shown a likelihood of success on the merits that the Termination and Certification Provisions, and the Enforcement Threat Provision in part, on their face constitute unlawful content-based and viewpoint-discriminatory restrictions on speech in violation of the First Amendment, and on their face also run afoul of due process because of their vagueness. ECF No. 44 at 38-55; *see also* ECF No. 61 at 1-2 (order denying stay pending appeal). In particular, the Court held that Plaintiffs have shown a likelihood of success on the merits as follows:

- The Termination Provision, as to which Plaintiffs brought facial challenges under the Spending Clause (Count 1) and the Fifth Amendment (Count 2), "invites arbitrary and discriminatory enforcement" and "offers insufficient notice to current grantees about whether and how they can adapt their conduct to avoid termination of their grants or contracts," and in so doing facially violates the "'more stringent vagueness test'" that applies when a law "'interferes with the right of free speech or of association.'" ECF No. 44 at 38-39 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

- The Certification Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 5) and separation of powers (Count 6), "operates as a facially viewpoint-discriminatory order," "constitutes a content-based restriction on the speech rights of federal contractors and grantees . . . because such restriction expands to all of those contractors' and grantees work, whether funded by the government or not," and also "unconstitutionally

5

restricts, and retaliates against, contractors' and grantees' free speech rights even within the scope of the pertinent programs." *Id.* at 45 & 47-48.

- The Enforcement Threat Provision, as to which Plaintiffs brought facial challenges under the First Amendment (Count 4) and Fifth Amendment (Count 3), violates the First Amendment because it "threatens . . . enforcement actions" using "a content-based restriction on protected speech that would not pass the high bar of strict scrutiny" and further constitutes an "unlawful viewpoint-based restriction on protected speech." *Id.* at 50, 52. And it violates the Fifth Amendment because, among other things, while "rescind[ing] swaths of existing executive branch guidance on what the executive branch considers the federal civil rights laws to require, prohibit, or allow," it gives no "guidance on what the new administration considers to constitute 'illegal DEI discrimination and preferences,' J21 Order § 4(b)(iv), or '[p]romoting diversity,' *id.* § 3(b)(ii), or 'illegal DEI and DEIA policies,' *id.* § 1, or what types of 'DEI programs or principles' the new administration considers 'illegal' and is seeking to 'deter,' *id.* § 4(b)(iii)." *Id.* at 53-54.

Each of those ways in which Plaintiffs have shown that the Challenged Provisions are unconstitutional are deficiencies with those provisions on their face. Any executive agency, department or commission acting pursuant to the Challenged Provisions would be acting pursuant to an order that Plaintiffs have shown a strong likelihood of success in establishing is unconstitutional on its face.

<u>Second</u>, the Termination and Certification Provisions are directives the President issued to *all* executive agencies, departments and commissions, J20 Order § 2(a)(i); J21 Order § 3(b)(iv), and the Enforcement Threat Provision was an express directive by the

SUPP.ADD.10

President to the Department of Justice. J21 Order § 4(b)(iii). Defendants named in
Plaintiffs' complaint include the President in his official capacity. ECF No. 1 ¶ 22. The
Preliminary Injunction—both original and as clarified—is tailored to the executive
branch agencies, departments and commissions that were directed, and have acted or
may act, pursuant to the President's directives in the Challenged Provisions of the J20
and J21 Orders. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561
U.S. 477, 513-14 (2010) (holding that the President is responsible and accountable for
executive agencies that are executing the laws); *Seila Law LLC v. Consumer Fin. Prot.
Bureau*, 591 U.S. 197, 203-204 (2020) (same).

   Third, enjoining only the agencies that Plaintiffs specifically named, and ignoring
the fact that the President (who issued the Challenged Provisions) is a named defendant,
would fail to provide complete relief to Plaintiffs and their members themselves
because, among other things, they are at risk of their speech being chilled by many non-
named federal executive agencies, as Plaintiffs explain. ECF No. 65 at 13. Artificially
limiting the preliminary injunction in the way Defendants propose also would make the
termination status of a federal grant, or the requirement to certify compliance by a
federal contractor, turn on which federal executive agency the grantee or contractor
relies on for current or future federal funding—even though the agencies would be
acting pursuant to the exact same Challenged Provisions—thereby "causing 'inequitable
treatment' in an area in which uniformity is needed." *CASA, Inc. v. Maribel*, No. 25-
1153, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025) (quoting *Roe v. Dep't. of Defense*,
947 F.3d 207, 231-32 (4th Cir. 2020) and *HIAS, Inc. v. Trump*, 985 F.3d 309, 326-27
(4th Cir. 2021)).

SUPP.ADD.11

## III.     CONCLUSION

For these reasons and those previously articulated, the Court will issue a separate

order clarifying that the Preliminary Injunction, consistent with the Court's reasoning in

the February 21, 2025 Memorandum Opinion, applies as follows:

> The Preliminary Injunction applies to and binds Defendants
> other than the President, as well as all other federal executive
> branch agencies, departments, and commissions, and their
> heads, officers, agents, and subdivisions directed pursuant to
> the J20 and J21 Orders (collectively, the "Enjoined Parties").

Date:  March 10, 2025                              _____/s/_____
                                                   Adam B. Abelson
                                                   United States District Judge

SUPP.ADD.12