## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 25-1189

**NATIONAL ASSOCIATION OF DIVERSITY OFFICERS IN HIGHER EDUCATION, et al.,**

*Plaintiffs-Appellees,*

v.

**DONALD J. TRUMP et al.,**

*Defendants-Appellants.*

---

**BRIEF OF *AMICI CURIAE* ACLU OF MARYLAND, PUBLIC JUSTICE CENTER, AND UNION OF CONCERNED SCIENTISTS, IN SUPPORT OF APPELLEE, BY WRITTEN CONSENT**

---

Michael R. Abrams
Deborah A. Jeon
Sonia Kumar
Zoe M. Ginsberg
**AMERICAN CIVIL LIBERTIES UNION OF MARYLAND FOUNDATION**
3600 Clipper Mill Road, Suite 200
Baltimore, MD 21211
Telephone: (410) 889-8555
Facsimile: (410) 366-7838
michaelrossabrams@gmail.com
jeon@aclu-md.org
kumar@aclu-md.org
zginsberg@aclu-md.org

*Counsel for Amici Curiae*

May 15, 2025

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................ i

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF INTEREST ...................................................................x

I.    INTRODUCTION ............................................................................1

II.   ARGUMENT ...................................................................................3

    A.    Activity related to diversity, equity, inclusion, and accessibility is not inherently discriminatory, and calling it illegal does not make it so..................................................................................................3

        1.    The purpose of DEIA is to ensure merit-based opportunity. ...........3

        2.    The Orders wrongly characterize all disfavored diversity activity as per se illegal. ....................................................................5

    B.    The government is relying on the Orders to crack down on expression related to diversity, regardless of legality. .........................8

        1.    Termination of disfavored scientific activity .................................10

        2.    Transformation of American education ........................................16

        3.    Termination of disfavored charitable activity...............................20

        4.    Coercion of private sector ideological compliance ......................26

III.  CONCLUSION ...............................................................................31

CERTIFICATE OF RULES COMPLIANCE .........................................32

CERTIFICATE OF SERVICE.................................................................32

# TABLE OF AUTHORITIES

**Cases**

*Abrego Garcia v. Noem*, --- F.R.D. ----, 2025 WL 1166402
 (D. Md. Apr. 22, 2025) ........................................................................7

*Am. Fed. of Teachers v. DOE*, --- F. Supp. 3d ----, 2025 WL 1191844
 (D. Md. Apr. 24, 2025)......................................................................17

*Bradwell v. Illinois*, 83 U.S. 130 (1872)................................................4

*Chae Chan Ping v. United States*, 130 U.S. 581 (1889)..........................4

*Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1 (1831)...........................4

*Downes v. Bidwell*, 182 U.S. 244 (1901).................................................4

*Dred Scott v. Sanford*, 60 U.S. 393 (1857) .............................................4

*J.G.G. v. Trump*, --- F. Supp. 3d ----, 2025 WL 1119481
 (D.D.C. Apr. 16, 2025).........................................................................7

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
 --- F. Supp. 3d ----, 2025 WL 1187730 (D.D.C. Apr. 24, 2025) ..........7

*NAACP v. DOE*, --- F. Supp. 3d ----, 2025 WL 1196212
 (D.D.C. Apr. 24, 2025).......................................................................17

*Nat'l Ass'n of Diversity Offs. in Higher Educ. v. Trump*,
 No. 25-1189 (4th Cir. Mar. 14, 2025) ..................................................4

*Nat'l Educ. Ass'n v. DOE*, --- F. Supp. 3d ----, 2025 WL 1188160
 (D.N.H. Apr. 24, 2025) ................................................................passim

Nat'l Urb. League v. Donald J. Trump, No. 1:25-cv-00471
 (D.D.C. Feb. 19, 2025) .......................................................................22

*Perkins Coie LLP v. U.S. Dep't of Just.*, --- F. Supp. 3d ----, 2025 WL 1276857 (D.D.C. May 2, 2025) ...........................................27

*Sanchez Puentes v. Garite*, --- F. Supp. 3d ----, 2025 WL 1203179 (W.D. Tex. Apr. 25, 2025) .......................................................7

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ...............................................3

**Executive Orders**

Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 29, 2025) ........................1, 9, 10

Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025) ..........................passim

**Other Authorities**

Alan Z. Rozenshtein, *What Happens when Courts Can't Trust the Executive Branch?*, Lawfare (Apr. 10, 2025), https://www.lawfaremedia.org/article/what-happens-when-courts-can-t-trust-the-executive-branch ..............................7

Alexis Akwagyiram & Preeti Jha, *Trump's DEI Ban Throttles Africa's Gender Investments*, Semafor (May 7, 2025), https://www.semafor.com/article/05/07/2025/trumps-dei-ban-throttles-africas-gender-investments .................................30

Alphonso David, Commentary, *Trump's Uncharitable War on Charity*, U.S. News (Apr. 9, 2025), https://www.usnews.com/opinion/articles/2025-04-09/trump-dei-nonprofits-philanthropy-free-speech-liberty ..................................26

Benjamin Mueller, *Trump Administration Slashes Research into L.G.B.T.Q. Health*, N.Y. Times (May 4, 2025), https://www.nytimes.com/2025/05/04/health/trump-administration-slashes-research-into-lgbtq-health.html.................13

Brian Lumpkins, *Asheville Changes Helene Disaster Recovery Plan after Federal Criticism of 'DEI Criteria'*, Charlotte Observer (Mar. 13, 2025)..........10

Conor Murray & Molly Bohannon, *Here Are All the Companies Rolling Back DEI Programs*, Forbes (Apr. 11, 2025), https://www.forbes.com/sites/conor murray/2025/04/11/ibm-reportedly-walks-back-diversity-policies-citing-inherent-tensions-here-are-all-the-companies-rolling-back-dei-programs..........28

Craig Trainor, Acting Ass't Sec'y for C.R., DOE, Dear Colleague Letter (Feb. 14, 2025), https://www.ed.gov/media/document/dear-colleague-letter-sffa-v-harvard-109506.pdf ...................................................................17

Daniel Wiessner, *U.S. Civil Rights Agency Targets 20 Big Law Firms with Demand for DEI Data*, Reuters (Mar. 17, 2025), https://www.reuters.com/world/us/us-civil-rights-agency-warns-law-firms-over-workplace-dei-policies-2025-03-17 ...........................................................................10

David A. Fahrenthold et al., *Nonprofits Dread Attempts to Scrutinize Diversity Initiatives*, N.Y. Times (Jan. 31, 2025), https://www.nytimes.com/2025/01/31/us/politics/nonprofits-dread-attempts-to-scrutinize-diversity-initiatives.html ....25

Dep't of Lab., Training and Employment Notice 21-24 (Jan. 22, 2025), https://www.dol.gov/agencies/eta/advisories/ten-21-24 ......................................21

DOE, President Trump's First 100 Days: Education in America (Apr. 29, 2025), https://www.ed.gov/about/initiatives/president-trumps-first-100-days-education-america ..........................................................................19

DOE, Press Release, *U.S. Department of Education Takes Action to Eliminate DEI* (Jan. 23, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-takes-action-eliminate-dei...........................................18

DOE, *Schools Should Be Focused on Learning*, https://enddei.ed.gov .................19

Drew Lindsay, *Trump's DEI Order Takes Aim at the Biggest Foundations. Here Are 346 that Could Face a Probe*, Chron. of Philanthropy (Feb. 27, 2025), https://www.philanthropy.com/article/these-346-foundations-are-candidates-for-a-trump-dei-investigation ..........................................................26

EEOC, Letters, Review of [Law Firms'] Compliance with Title VII of the Civil Rights Act of 1964 (Mar. 17, 2025), https://www.eeoc.gov/sites/default/files/2025-03/Law_Firm_Letters_-_03.17.2025.pdf ...............................27

Eva Tesfaye, *Is Planting Trees 'DEI'? Trump Administration Cutes Nationwide Tree-Planting Effort*, NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/g-s1-55090/trump-dei-trees-removal-climate-change.....................24

Jasmine Mithani & Mel Leonor Barclay, *Domestic Violence Nonprofits Rocked by Trump Funding Freeze*, 19th News (Feb. 6, 2025), https://19thnews.org/2025/02/trump-funding-freeze-domestic-violence-nonprofits ............................26

Jeff Green, *Booz Allen Scraps DEI Programs in Reaction to Trump Orders*, Bloomberg (Feb. 7, 2025), https://www.bloomberg.com/news/articles/2025-02-07/booz-allen-scraps-dei-programs-in-reaction-to-trump-orders..........28

Jennie Runevitch, *Feds Pull the Plug on $400,000 'Keep Indianapolis Beautiful' Grant*, 13 WTHR (Feb. 28, 2025), https://www.wthr.com/article/news/local/feds-federal-government-pull-the-plug-on-400000-dollar-keep-indianapolis-beautiful-grant-indy-dei/531-c5319b64-0b2d-4d05-81eb-8f6eda63e529 .....................................................................24

Julia Anderson, Opinion, *DEI Ban Ends Much More than DEI*, Daily Iowan (Mar. 10, 2025), https://dailyiowan.com/2025/03/10/opinion-dei-ban-ends-much-more-than-dei..............................................................................16

Karen Yourish et al., *These Words Are Disappearing in the New Trump Administration*, N.Y. Times (Mar. 7, 2025), https://www.nytimes.com/interactive/2025/03/07/us/trump-federal-agencies-websites-words-dei.html......12

Katherine J. Wu, *The NIH's Grant Terminations Are 'Utter and Complete Chaos'*, Atlantic (Mar. 14, 2025), https://www.theatlantic.com/health/archive/2025/03/nih-grant-terminations/682039 ..........................................11, 12

Kathryn Palmer, *Trump Orders Disrupt Academic Research*, Inside Higher Ed (Feb. 3, 2025), https://www.insidehighered.com/news/government/science-research-policy/2025/02/03/how-trumps-executive-orders-are-disrupting .........15

Kristen Parisi, *DEI Tracker: Several Law Firms Retreat from DEI Following Trump Administration's Threats*, H.R. Brew (Apr. 2, 2025), https://www.hr-brew.com/stories/2025/04/02/dei-tracker-several-law-firms-retreat-from-dei-following-the-trump-administration-s-threats ...............................................28

Lauren Weber, *Trump Administration Takes DEI Battle to Federal Contractors*, Wall St. J. (Mar. 24, 2025), https://www.wsj.com/politics/policy/trump-administration-takes-dei-battle-to-federal-contractors-4ef6f31d........................29

Leila Abboud et al., *US Tells European Companies to Comply with Donald Trump's Anti-Diversity Order*, Fin. Times (Mar. 28, 2025), https://www.ft.com/content/02ed56af-7595-4cb3-a138-f1b703ffde84 ..............30

Letter from S. Env't & Pub. Works Comm., to Lee M. Zeldin, Adm'r, Env't Prot. Agency (Mar. 21, 2025), https://www.epw.senate.gov/public/_cache/files/b/1/b187b894-093b-4937-a70a-349313d4bb72/FB84FA8E7901E8 23EF0AF5E587D043E4CA2564F248F535919E3135B628764B80. 3.25.25-letter-re-ej-grant-terminations-and-oej-ecr-closure.pdf.........................14

Liam Reilly, *Trump Baselessly Accuses News Media of 'Illegal' Behavior and Corruption in DOJ Speech*, CNN (Mar. 14, 2025), https://www.cnn.com/2025/03/14/media/trump-media-speech .................................................6

Lisa Rozner, *Trump Says Any School that Allows 'Illegal Protests' Will Lose Funding as Columbia Faces Review of Federal Contracts*, CBS News (Mar. 4, 2025), https://www.cbsnews.com/newyork/news/trump-columbia-university-federal-funding ...................................................................6

Mary Kekatos, *NIH Terminating Active Research Grants Related to LGBTQ+, DEI Studies*, ABC News (Mar. 7, 2025), https://abcnews.go.com/Health/nih-terminating-active-research-grants-related-lgbtq-dei/story?id=119553232 ........11

Max Kozlov & Smriti Mallapaty, *Exclusive: NIH to Terminate Hundreds of Active Research Grants*, 639 Nature 281 (2025), https://www.nature.com/articles/d41586-025-00703-1 ................................................................12

Memorandum from the Att'y Gen., Dep't of Just., Ending Illegal DEI and DEIA Discrimination and Preferences (Feb. 5, 2025), https://www.justice.gov/ag/media/1388501/dl?inline ........................................................18

Memorandum from the White House, Advancing United States Interests when Funding Nongovernmental Organizations (Feb. 6, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/memorandum-for-the-heads-of-executive-departments-and-agencies........................................25

Noam Ross et al., Grant Watch, https://grant-watch.us............................................12

Perry Stein et al., *DOJ Cancels Grants for Gun-Violence and Addiction Prevention, Victim Advocacy*, Detroit News (Apr. 23, 2025), https://www.detroitnews.com/story/news/nation/2025/04/23/doj-cancels-grants-for-gun-violence-and-addiction-prevention-victim-advocacy/83236873007 ........................................................................................23

President John F. Kennedy, Report to the American People on Civil Rights (June 11, 1963), https://www.jfklibrary.org/learn/about-jfk/historic-speeches/televised-address-to-the-nation-on-civil-rights ......................................5

Sahil Kapur, *'Totally Illegal': Trump Escalates Rhetoric on Outlawing Political Dissent and Criticism*, NBC News (Oct. 13, 2024), https://www.nbcnews.com/politics/2024-election/totally-illegal-trump-escalates-rhetoric-outlawing-political-dissent-c-rcna174280...............................................................6

Sam Blum, *'It's Pure Chaos.' Government Contractors Chart an Uncertain Path After Trump's Sweeping Anti-DEI Orders*, INC (Feb. 7, 2025), https://www.inc.com/sam-blum/its-pure-chaos-government-contractors-chart-an-uncertain-path-after-trumps-sweeping-anti-dei-orders/91145134.........29

Sarah N. Lynch & Peter Eisler, *Exclusive: U.S. Justice Dept Grant Cuts Valued at $811 Million, People and Records Say*, Reuters (Apr. 24, 2025), https://www.reuters.com/world/us/us-justice-dept-grant-cuts-valued-811-million-people-familiar-say-2025-04-24. ........................................................22

Sarah Owermohle, *Trump's Diversity Purge Freezes Hundreds of Millions in Medical Research at Universities across the Country*, CNN (May 8, 2025), https://www.cnn.com/2025/05/08/politics/universities-medical-research-funding-frozen-trump-diversity-purge ................................................30

Sarah Schwartz, *National Science Foundation Cancels more than 400 STEM Grants*, Educ. Week (May 2, 2025), https://www.edweek.org/teaching-learning/national-science-foundation-cancels-more-than-400-stem-grants/2025/05 ........................................................................13

Serena Lin, *Trump's 'Opening Salvo' in his War Against Criminal Justice Reform Starts with this Nonprofit*, MotherJones (Apr. 14, 2025), https://www.motherjones.com/politics/2025/04/vera-institute-trumps-opening-salvo-in-his-war-against-criminal-justice-reform-starts-with-this-one-nonprofit ........................................................................23

Sharon Otterman et al., *Some Schools Act After Trump's D.E.I. Orders. Others Say They'll Resist*, N.Y. Times (Feb. 13, 2025), https://www.nytimes.com/2025/02/13/nyregion/trump-dei-executive-orders-schools.html ........................................................................20

Sophia Nguyen & Herb Scribner, *Trump Fires Library of Congress Chief Carla Hayden, Citing DEI*, Wash. Post (May 9, 2025), https://www.washingtonpost.com/books/2025/05/08/trump-fires-librarian-of-congress ................................31

Stephanie Armour, *Trump's DEI Undoing Undermines Hard-Won Accommodations for Disabled People*, KFF Health News (Apr. 3, 2025), https://kffhealthnews.org/news/article/trump-dei-executive-order-undermines-disability-accommodations-for-disabled-people ...........................14

Theo Burman, *Donald Trump Calls Tesla Boycotts Illegal*, Newsweek (Mar. 11, 2025), https://www.newsweek.com/donald-trump-tesla-boycott-illegal-2042647 ..................................................................................................6

U.S. Dep't of Hous. & Urb. Dev., Press Release, *Secretary Turner Denounces DEI Criteria in Asheville's Draft Disaster Plan* (Mar. 11, 2025), https://www.hud.gov/news/hud-no-25-040...........................................................9

## STATEMENT OF INTEREST

*Amici* are three public-interest organizations with significant interests implicated by this appeal. The **American Civil Liberties Union of Maryland** ("ACLU of Maryland") is a nonprofit, nonpartisan organization and state affiliate of the national ACLU, dedicated to protecting the civil rights and civil liberties of residents of the State of Maryland and committed to advancing racial justice and equity. The ACLU of Maryland has frequently appeared before federal courts as counsel for a party or as *amicus curiae* in First Amendment cases. The **Union of Concerned Scientists** (the "Union") is a member-supported nonprofit that is fighting for a safer and healthier world. It puts rigorous, independent science into action, developing solutions and advocating for a healthy, safe, and just future. The Union advocates for scientific solutions that advance racial and economic equity, and it and its members depend on scientific funding that will not dilute their core principles. The **Public Justice Center** ("PJC") is a non-profit civil rights and anti-poverty legal organization established in 1985. The PJC uses impact litigation, public education, and legislative advocacy through a race equity lens to accomplish law reform for its clients. The organization is committed to protecting free expression and activity that advances diversity, equity, inclusion, and accessibility.

x

## I.    INTRODUCTION

In a few short months, the two Executive Orders challenged in this case[1] have done more to destabilize civil rights progress than any policy development in recent memory. Yet, before this Court, the government contends that the Orders have rather limited effect. It claims that their text condemning "illegal DEI" "merely directs agencies to enforce preexisting prohibitions against discrimination." Appellants' Op. Br. at 26. According to the government, the term "illegal DEI" is not, as it might appear, a pejorative descriptor demeaning all efforts to advance equity, regardless of their specific contours; rather, it is a limiting principle targeting some otherwise undefined DEI it considers unlawful. In the government's rendering, Plaintiffs rely on "layers of supposition" and "unfounded speculation" to argue that the Orders are unconstitutionally vague, unlawfully chilling free speech and expression. *Id.* at 28, 31.

Meanwhile, *outside* this Court, the government tells a radically different story—applying the Orders to carry out a broadscale attack on diversity interests, minority representation, and free expression across public life. Federal officials have expressly relied on the Orders to target disfavored science, censor classroom

---

[1] Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 29, 2025); Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 31, 2025) (hereafter, "Orders" or "EOs").

teaching, undermine nonprofit work, and coerce the private sector. As a result, both institutions and individuals are suffering dire consequences.

The district court held that the Orders' vagueness and chilling effects warrant injunctive relief. In its appeal, the government charges the district court with assuming the Orders "mean[] something very different from what [they] say[]." *Id.* But the government's out-of-court conduct confirms the district court's understanding: the Administration's express interpretation and application of these Orders *do* cast all efforts to advance diversity as legally suspect, and the Orders must be so understood.

Here, *Amici* will show that the government is not using the term "illegal" in "illegal DEI" as a limiting principle. Rather, as *Amici* will catalog, it is relying on the Orders to cast all DEI as illegal and implement an ideological crackdown on expression it disfavors. We urge the Court to resolve this appeal based on the government's real-world actions, not its in-court representations.

2

## II.      ARGUMENT

**A. Activity related to diversity, equity, inclusion, and accessibility is not inherently discriminatory, and calling it illegal does not make it so.**

### 1.  The purpose of DEIA is to ensure merit-based opportunity.

The Orders do not define what they mean by DEIA. The term is not susceptible to clear definition, and the words themselves—*diversity, equity, inclusion,* and *accessibility*—reflect aspirational values more than any concrete set of practices. Regardless, diversity initiatives, and any merely related activity, are not generally regarded as per se illegal discrimination. That was true before *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College ("SFFA")*, 600 U.S. 181 (2023), and it remains true today. Yet, without ever defining them, the Orders sweepingly condemn all policies and practices seeking to foster diversity as "dangerous, demeaning, and immoral" discrimination that creates a "pernicious identity-based spoils system." Exec. Order No. 14,173, 90 Fed. Reg. 8633, 8633 (Jan. 31, 2025).

The Orders thus rest on a false premise. Diversity, equity, inclusion, and accessibility initiatives serve to promote merit-based opportunity, not undermine it. When the status quo is marked by systemic disadvantage and biased barriers to entry, merit cannot prevail. By honestly acknowledging that some people tend to be treated differently based on their identity, such initiatives redress bias and enable fairness. *See* Order, *Nat'l Ass'n of Diversity Offs. in Higher Educ. v. Trump*, No. 25-1189,

3

ECF No. 29, at 6 (4th Cir. Mar. 14, 2025) (Diaz, C.J., concurring) ("From boardrooms to courtrooms to operating rooms to classrooms, previously marginalized Americans are thriving in spaces long closed to them. And we are the better for it.").

Properly understood, the goals of diversity, equity, inclusion, and accessibility continue the project of the Civil Rights Movement. It reckons with the legacy of hundreds of years of identity-based subjugation woven through American society by courts and lawmakers.[2] It calls for remedying past discrimination and disenfranchisement to achieve a fairer society today. Such an approach is consistent

---

[2] *See, e.g.*, *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 27–28 (1831) (Johnson, J., concurring) (agreeing that state could lawfully deny certain rights to Native American residents because Native nations were "nothing more than wandering hordes, held together only by ties of blood and habit, and having neither laws or government beyond what is required in a savage state"); *Dred Scott v. Sanford*, 60 U.S. 393, 407–12 (1857) (concluding that the Constitution was not intended to include Black people "as to the rights of man and the rights of the people" because Black people are "of an inferior order . . . unfit to associate with the white race"); *Bradwell v. Illinois*, 83 U.S. 130, 141 (1872) (Bradley, J., concurring) (agreeing that a qualified woman could not join the state bar because "[t]he natural and proper timidity and delicacy which belongs to the female sex evidently unfits it for many of the occupations of civil life"); *Chae Chan Ping v. United States*, 130 U.S. 581, 606 (1889) (upholding Chinese Exclusion Act because government has inherent authority to protect against "vast hordes" of "foreigners of a different race in this country, who will not assimilate with us"); *Downes v. Bidwell*, 182 U.S. 244, 306 (1901) (White, J., concurring) (agreeing that Constitution did not extend to territory of Puerto Rico because government had a "right" to acquire "an unknown island, peopled with an uncivilized race, . . . valuable to the United States," and "such right could not be practically exercised if the result would be to endow" Constitutional protection "on those absolutely unfit to receive it").

with the federal civil rights laws that the Civil Rights Movement secured and that the Orders purport to enforce. *See* President John F. Kennedy, Report to the American People on Civil Rights (June 11, 1963), https://www.jfklibrary.org/learn/about-jfk/historic-speeches/televised-address-to-the-nation-on-civil-rights ("The heart of the question is whether all Americans are to be afforded equal rights and equal opportunities, . . . . One hundred years of delay have passed since President Lincoln freed the slaves, yet their heirs, their grandsons, are not fully free. . . . Now the time has come for this Nation to fulfill its promise.").

### 2. The Orders wrongly characterize all disfavored diversity activity as per se illegal.

The Orders erase this context. They paint with the broadest possible brush to portray *all* efforts to promote diversity, equity, inclusion and accessibility as unlawful. That this portrayal is not, in fact, *true* appears to be of no moment to the government. It provides the pretext needed to crack down on activity and expression that advance equity, which is the effective purpose of the Orders. *See, e.g.,* Exec. Order. No. 14,173, 90 Fed. Reg. at 8634 (directing the Office of Federal Contract Compliance Programs to immediately cease "[p]romoting diversity").

Regardless of personal views about what "DEIA" means or the wisdom of any particular DEIA initiative, activity merely related to diversity was not widely understood as "illegal" until the President issued these Orders. The Administration's characterization of the current state of the law sweeps much more broadly than a fair

reading of existing cases permits, sowing confusion. And that discord comes from the Chief Executive himself, who uses the word "illegal" liberally to condemn conduct he disfavors, regardless of its actual legality.[3]

Moreover, people reading the plain language of the Orders to guide their actions cannot ignore the broader context. This Administration has made unprecedented use of executive orders, adopted extraordinarily aggressive approaches to implement them, and disregarded long-settled norms regarding governmental conduct in the process. Officials use these executive orders to ascribe authority to the President on questionable legal bases; employ derogatory language to publicly condemn disfavored actors, belief systems, and practices; and threaten enforcement actions regardless of actual illegality. Thus, *Amici* respectfully urge the

---

[3] *See, e.g.*, Liam Reilly, *Trump Baselessly Accuses News Media of 'Illegal' Behavior and Corruption in DOJ Speech*, CNN (Mar. 14, 2025), https://www.cnn.com/2025/ 03/14/media/trump-media-speech (quoting President characterizing negative press coverage as "totally illegal"); Lisa Rozner, *Trump Says Any School that Allows 'Illegal Protests' Will Lose Funding as Columbia Faces Review of Federal Contracts*, CBS News (Mar. 4, 2025), https://www.cbsnews.com/newyork/news/ trump-columbia-university-federal-funding (threatening funding cuts against universities that allow "illegal protests"); Theo Burman, *Donald Trump Calls Tesla Boycotts Illegal*, Newsweek (Mar. 11, 2025), https://www.newsweek.com/donald-trump-tesla-boycott-illegal-2042647 (calling protests against car company "illegal"); Sahil Kapur, *'Totally Illegal': Trump Escalates Rhetoric on Outlawing Political Dissent and Criticism*, NBC News (Oct. 13, 2024), https://www.nbcnews.com/politics/2024-election/totally-illegal-trump-escalates-rhetoric-outlawing-political-dissent-c-rcna174280 (calling 60 Minutes editorial decisions "totally illegal" on campaign trail).

Court to consider whether it can extend its usual deference to the government's litigation positions. *See* Alan Z. Rozenshtein, *What Happens when Courts Can't Trust the Executive Branch?*, Lawfare (Apr. 10, 2025), https://www. lawfaremedia.org/article/what-happens-when-courts-can-t-trust-the-executive-branch (considering role of presumption of regularity when Executive Branch is acting irregularly).[4]

This appeal in large part turns on whether this Court will credit the government's insistence that the Orders are limited to "illegal DEI"—that is, diversity efforts that are *actually* illegal. In making that determination, *Amici* urge the Court to check the government's in-court representations against its out-of-court statements and actions. After all, the people currently facing down the threatened force of the federal government for engaging in diversity activity will be chilled by the government's conduct, regardless of any lawyerly assurances made to this Court.

---

[4] *See also Sanchez Puentes v. Garite*, --- F. Supp. 3d ----, 2025 WL 1203179, at *15 (W.D. Tex. Apr. 25, 2025) ("This Court takes clear offense to Respondents wasting judicial resources to admit to the Court it has no evidence, . . . ."); *League of United Latin Am. Citizens v. Exec. Off. of the President*, --- F. Supp. 3d ----, 2025 WL 1187730, at *30 n.29 (D.D.C. Apr. 24, 2025) ("The contradiction between Defendants' factual representations and the facts on the ground is particularly striking . . . . "[T]he Court must remark that this exchange does not reflect the level of diligence the Court expects from any litigant—let alone the United States Department of Justice."); *Abrego Garcia v. Noem*, --- F.R.D. ----, 2025 WL 1166402, at *3 (D. Md. Apr. 22, 2025) ("Defendants have failed to respond in good faith, and their refusal to do so can only be viewed as willful and intentional noncompliance."); *J.G.G. v. Trump*, --- F. Supp. 3d ----, 2025 WL 1119481, at *20 (D.D.C. Apr. 16, 2025) (finding probable cause to hold the government in criminal contempt of court).

**B. The government is relying on the Orders to crack down on expression related to diversity, regardless of legality.**

The Orders first declare that encouraging diversity is disfavored by the federal government—indeed, that it is "illegal," "immoral," "shameful," "dangerous," "demeaning," "corrosive," "pernicious." Exec. Order No. 14,151, 90 Fed. Reg. 8339, 8339 (Jan. 29, 2025); Exec. Order No. 14,173, 90 Fed. Reg. at 8633. Next, they order the termination of all diversity, equity, inclusion, and accessibility "activities" "in the Federal Government, under whatever name they appear." Exec. Order No. 14,151, 90 Fed. Reg. at 8339–41; Exec. Order. No. 14,173, 90 Fed. Reg. at 8634–36. Finally, they seek to coerce the same policy outcome in state and local governments, charitable organizations, and the private sector, by threatening enforcement actions and loss of federal contracts unless diversity activities end. Exec. Order No. 14,151, 90 Fed. Reg. at 8339–41; Exec. Order. No. 14,173, 90 Fed. Reg. at 8634–36.

The government's Opening Brief insists, again and again, that the Orders only cover "illegal discrimination" and "illegal DEI." *E.g.*, Appellants' Op. Br. at 29 ("[A]ll plaintiffs must do is comply with federal law itself.").[5] But the

---

[5] *See also* Appellants' Op. Br. at 32 (stating that the Orders only "target[] illegal DEI programs" and "discrimination," which is "unlawful conduct, not protected speech"); *id.* at 35 ("To the extent plaintiffs' programs do not violate federal law, they are not implicated . . . ."); *id.* at 45 (stating that the Orders only "instruct the government to take actions consistent with federal law").

Administration's real-world application of the Orders contradicts its lawyers' in-court minimizations. Federal agencies and officials have made clear the Orders call for terminating all diversity-related activity—not only practices that would be considered unlawful under existing legal precedent. *See, e.g.*, U.S. Dep't of Hous. & Urb. Dev., Press Release, *Secretary Turner Denounces DEI Criteria in Asheville's Draft Disaster Plan* (Mar. 11, 2025), https://www.hud.gov/news/hud-no-25-040 (citing the Orders to justify pause on City of Asheville's action plan for responding to historic natural disaster because it "incorporated DEI criteria"); Brian Lumpkins, *Asheville Changes Helene Disaster Recovery Plan after Federal Criticism of 'DEI Criteria'*, Charlotte Observer (Mar. 13, 2025) (explaining that, in 125-page plan laying out $225 million of investment, a section establishing $15 million "Small Business Support program" referred to supporting "vulnerable populations," including by "prioritiz[ing] assistance for Minority and Women-Owned Businesses"). As a result, lawful activity across society has been chilled just for being *related* to diversity, equity, inclusion, or accessibility, however remotely.

Of course, people facing potential targeting under the Orders would prefer to read them as the government purports to in this appeal. Then they could rest easy, continuing diversity-related expression without fear of retribution. However, when they see the government's broad interpretation of the Orders outside the courtroom, those with business on the line cannot afford to read so narrowly. They face potential

9

naming-and-shaming by the Department of Justice, federal enforcement actions, or termination of contracts and grant awards vital to their existence. Exec. Order No. 14,173, 90 Fed. Reg. at 8635 (requiring the Attorney General to issue report naming purported wrongdoers across various sectors for federal investigation); *see, e.g.*, Daniel Wiessner, *U.S. Civil Rights Agency Targets 20 Big Law Firms with Demand for DEI Data*, Reuters (Mar. 17, 2025), https://www.reuters.com/world/us/us-civil-rights-agency-warns-law-firms-over-workplace-dei-policies-2025-03-17.

That is the heart of the unconstitutional chilling effect: out in the world, the government has demonstrated that it intends the Orders to apply much more broadly than it represents to this Court, threatening punitive consequences for those who do not comply to the government's satisfaction. In resolving this appeal, the Court should consider the government's demonstrated use of these Orders, not just its lawyerly rationalizations.

### 1. Termination of disfavored scientific activity

The Orders direct federal officials to "[e]xcise references to DEI and DEIA principles, under whatever name they appear, from Federal acquisition, **contracting**, **grants**, and financial assistance procedures," and to "[t]erminate all" such "**programs**, or **activities**." Exec. Order No. 14,173, 90 Fed. Reg. at 8634 (emphases added). As a result, the government has implemented unprecedented terminations of federally-funded science. Katherine J. Wu, *The NIH's Grant Terminations Are 'Utter*

10

*and Complete Chaos'*, Atlantic (Mar. 14, 2025), https://www.theatlantic.com/health/ archive/2025/03/nih-grant-terminations/682039; *see also* Mary Kekatos, *NIH Terminating Active Research Grants Related to LGBTQ+, DEI Studies*, ABC News (Mar. 7, 2025), https://abcnews.go.com/Health/nih-terminating-active-research-grants-related-lgbtq-dei/story?id=119553232 (quoting agency directives requiring National Institutes of Health (NIH) officials to "review awards for new and ongoing projects to ensure they do not 'contain any DEI research activities or DEI language that give the perception that NIH funds can be used to support these activities'").

The government has directed termination of "grants that included a DEI component," but the Orders lack any definition or limiting factors, meaning this directive is interpreted broadly, without any definition or limiting factors. *See* Max Kozlov & Smriti Mallapaty, *Exclusive: NIH to Terminate Hundreds of Active Research Grants*, 639 Nature 281, 282 (2025), https://www.nature.com/ articles/d41586-025-00703-1 ("The guidance does not specify how to determine whether a project is discriminatory, which has caused confusion and anxiety among agency staff."). Absent constraints, the termination process has included searching grant proposals and contracts for keywords "that could conflict with Mr. Trump's executive orders." Karen Yourish et al., *These Words Are Disappearing in the New Trump Administration*, N.Y. Times (Mar. 7, 2025), https://www.nytimes. com/interactive/2025/03/07/us/trump-federal-agencies-websites-words-dei.html;

11

*see also* Wu, *supra* ("It was as if, one official told me, someone had performed a Ctrl+F search for certain terms, then copied and pasted the results.").

As a result, hundreds of federal grants for scientific research funded by NIH and the National Science Foundation (NSF) have been terminated just for including words related to minority identities, or even for just using words like "equity" or "women." *See* Noam Ross et al., Grant Watch, https://grant-watch.us (click "NIH Data," and "NSF Data," click "Race and DEI" tab) (collecting federal scientific grant terminations based on DEI executive orders). When discussing the cancellation of over $800 million in federal scientific grants for "research into the health of L.G.B.T.Q. people"—including "a major effort to prevent H.I.V. in adolescents and young adults," and "studies on antibiotic resistance, undiagnosed autism in sexual minority groups, and certain throat and other cancers that disproportionately affect those groups"—one H.H.S. official explicitly referenced these Orders. Benjamin Mueller, *Trump Administration Slashes Research into L.G.B.T.Q. Health*, N.Y. Times (May 4, 2025), https://www.nytimes.com/2025/05/04/health/trump-administration-slashes-research-into-lgbtq-health.html ("Andrew Nixon, a spokesman for the health department, [said] . . . last month that the move 'away from politicized D.E.I. and gender ideology studies' was in 'accordance with the president's executive orders.'").

The government is also applying the Orders to target diversity-related activity in the sciences—notably not limiting this to "illegal" DEIA work. The government has terminated funding for educational STEM programs perceived to be related to diversity. *See, e.g.*, Sarah Schwartz, *National Science Foundation Cancels more than 400 STEM Grants*, Educ. Week (May 2, 2025), https://www.edweek.org/teaching-learning/national-science-foundation-cancels-more-than-400-stem-grants/2025/05 (reporting termination of purportedly "wasteful DEI grants" included over 400 grants to fund K-12 STEM education initiatives, some of which "sought to expand participation of underrepresented students in STEM, or use science to investigate problems in students' communities," while others "had nothing to do with DEI themes" but simply "includ[ed] the word 'diversity,' such as for "[r]esearch into biodiversity of plants"). The Social Security Administration terminated funding to the Retirement and Disability Research Consortium, which sponsored research on barriers to employment faced by aging adults and best practices for helping individuals with disabilities transition to adulthood. Stephanie Armour, *Trump's DEI Undoing Undermines Hard-Won Accommodations for Disabled People*, KFF Health News (Apr. 3, 2025), https://kffhealthnews.org/news/article/trump-dei-executive-order-undermines-disability-accommodations-for-disabled-people.             The Environmental Protection Agency used the Orders to justify not only the termination of more than 400 previously awarded grants, but also the elimination of their Office

of Environmental Justice and External Civil Rights—an office charged with investigating violations of the very civil rights laws the Orders purport to enforce. *See* Letter from S. Env't & Pub. Works Comm., to Lee M. Zeldin, Adm'r, Env't Prot. Agency (Mar. 25, 2025), https://www.epw.senate.gov/public/_cache/files/b/1/b187 b894-093b-4937-a70a-349313d4bb72/FB84FA8E7901E823EF0AF5E587D043E4 CA2564F248F535919E3135B628764B80.3.25.25-letter-re-ej-grant-terminations-and-oej-ecr-closure.pdf.

These actions have upended the scientific community and created funding crises for major research institutions. But it is ultimately individual people who feel the greatest impact:

> "I have no idea if I'll still be granted the funds, or if my project is still eligible," said an NSF-funded doctoral student at Northwestern University, . . . . "Without it I can't really move forward in my career because I don't know if I'll be able to finish my data collection. If I don't finish that, I can't finish my Ph.D. on time."
>
> . . .
>
> "I don't explicitly do DEI work. I work on plant genomes," said Ben Stone, a postdoctoral fellow at the University of South Carolina whose salary is covered entirely by the [NSF's] Postdoctoral Research Fellowships in Biology program. "But the executive order is vague enough that it can encompass a lot of things that are in almost every NSF proposal."
>
> . . .

> Darby Saxbe, a psychology professor at the University of Southern California, said Thursday that she's not sure if she'll get the final installment of a $2 million, five-year NIH grant this month as planned. She uses that money to pay the salaries of junior researchers working on the project and doesn't know if she'll be able to pay them or cover their health insurance. . . . "Injecting new criteria into grant applications based on partisanship and political agenda makes the science weaker," Saxbe said. "Ironically, it does all the things Trump is accusing the current institutions of doing through DEI. This would create ideological rules that people have to follow in order to have their science considered."

Kathryn Palmer, *Trump Orders Disrupt Academic Research*, Inside Higher Ed (Feb. 3, 2025), https://www.insidehighered.com/news/government/science-research-policy/2025/02/03/how-trumps-executive-orders-are-disrupting.

The chilling effects spawned by the Orders are self-evident. Researchers who rely on federal funding for their scientific work and personal livelihoods are modifying their activities to avoid punitive consequences based on the Orders. Julia Anderson, Opinion, *DEI Ban Ends Much More than DEI*, Daily Iowan (Mar. 10, 2025), https://dailyiowan.com/2025/03/10/opinion-dei-ban-ends-much-more-than-dei ("The vague nature of the policies for institutions reliant on federal funds is leading many to eliminate any affiliation with any entity or practice that could trigger said financial withdrawal. These policies serve as an ultimatum and threat: Submit or suspend operations.").

15

There is no judicial precedent or regulatory authority, nor even any straight-faced legal argument, that all the research and programming targeted constitutes "illegal discrimination" in violation of federal civil rights laws. The government is applying the Orders to silence much more.

### 2. Transformation of American education

The federal government has relied on the Orders to coerce curricular and programming changes in schools and colleges nationwide. In a series of "Dear Colleague" letters, the Department of Education (DOE) has threatened to withhold federal funding from public schools unless states verify the termination of programs that promote diversity, equity, inclusion, and accessibility. *But see Nat'l Educ. Ass'n v. DOE*, --- F. Supp. 3d ----, 2025 WL 1188160 (D.N.H. Apr. 24, 2025) (enjoining DOE's actions on similar grounds as at issue in this appeal); *NAACP v. DOE*, --- F. Supp. 3d ----, 2025 WL 1196212 (D.D.C. Apr. 24, 2025) (same); *Am. Fed. of Teachers v. DOE*, --- F. Supp. 3d ----, 2025 WL 1191844 (D. Md. Apr. 24, 2025) (same). DOE's Letters target not only the use of racial preferences but also "toxic[] indoctrinat[ion]" of students by teaching about "systemic and structural racism." Craig Trainor, Acting Ass't Sec'y for C.R., DOE, Dear Colleague Letter (Feb. 14, 2025), https://www.ed.gov/media/document/dear-colleague-letter-sffa-v-harvard-109506.pdf; *see Am. Fed. of Teachers*, 2025 WL 1191844, at *21–22 (finding the

16

Letters "proscrib[e] specific forms of classroom speech" contrary to the First Amendment).

DOE required funding recipients to return a signed certification attesting to their compliance, even as the Letters and Orders fail to define "illegal DEI" or specify which activities violate the government's new reinterpretation of civil rights laws. *See NAACP*, 2025 WL 1196212, at *5–7 (finding unconstitutional vagueness because DOE "fail[ed] to provide an actionable definition of what constitutes 'DEI' or a 'DEI' practice, or delineate between a lawful DEI practice and an unlawful one"). This coupling of vague criteria for compliance with harsh, threatened punishment results in chilled activity far beyond only "illegal" diversity-related activity. "Although the 2025 Letter does not make clear what exactly it prohibits, it makes at least one thing clear: schools should not come close to anything that could be considered 'DEI,' lest they be deemed to have guessed wrong." *Nat'l Educ. Ass'n*, 2025 WL 1188160, at *11.

DOE has declared that its diversity-related actions flow directly from the Orders. DOE, Press Release, *U.S. Department of Education Takes Action to Eliminate DEI* (Jan. 23, 2025), https://www.ed.gov/about/news/press-release/us-department-of-education-takes-action-eliminate-dei (citing "President Trump's recent Executive Orders" to justify "actions" and "first steps" to "reorient[] the agency toward prioritizing meaningful learning ahead of divisive ideology in our

17

schools"). "[T]he Department will continue its comprehensive review of all agency programs and services to identify additional initiatives and working groups that may be advancing a divisive DEI agenda." *Id.*; *see also* Memorandum from the Att'y Gen., Dep't of Just., Ending Illegal DEI and DEIA Discrimination and Preferences (Feb. 5, 2025), https://www.justice.gov/ag/media/1388501/dl?inline ("Consistent with the January 21, 2025, Executive Order, the Department of Justice will work with the Department of Education to issue directions, . . . ."); Exec. Order No. 14,173, 90 Fed. Reg. at 8635 (requiring Secretary of Education to issue guidance).

Although DOE has claimed that its application of the Orders targets "illegal DEI" and "racial preferences" as set forth in existing legal precedent, it has also applied them far more broadly without any reasoning or analysis tied to case law, statutes, or regulations. For example, DOE touts the following anti-DEI actions: "Removing over 2,300 webpages and assets from the Biden-Harris DEI and woke agenda; Canceling over $350 million in contracts and grants to several Regional Educational Laboratories and Equity Assistance Centers; Cutting over $600 million in divisive teacher training grants; and Terminating $226 million in divisive and wasteful grants that were awarded under the Comprehensive Centers Program." *See* DOE, President Trump's First 100 Days: Education in America (Apr. 29, 2025), https://www.ed.gov/about/initiatives/president-trumps-first-100-days-education-america. DOE also launched a public-facing web portal—"EndDEI.ed.gov"—to

18

solicit reports of "illegal discriminatory practices," including teaching perceived as "divisive ideologies and indoctrination." *See* DOE, *Schools Should Be Focused on Learning*, https://enddei.ed.gov; *Nat'l Educ. Ass'n*, 2025 WL 1188160, at *3 ("The press release [announcing the portal] quotes . . . the Co-Founder of a group known as 'Moms for Liberty'" stating that "'[f]or years, parents have been begging schools to focus on teaching their kids practical skills like reading, writing, and math, instead of pushing critical theory, rogue sex education and divisive ideologies.'"); *see also Nat'l Educ. Ass'n*, 2025 WL 1188160, at *21 ("Defendants' argument—that the 2025 Letter does no more than clearly announce the uncontroversial proposition that discrimination is unlawful—ignores the 'End DEI' portal and the press release accompanying it. The Department is not soliciting complaints about only those DEI programs or teaching practices that discriminate based on race.").

Again, the vagueness and chilling effects of these actions are obvious, extending far beyond "illegal discrimination" as defined by the federal civil rights statutes. *Nat'l Educ. Ass'n*, 2025 WL 1188160, at *11 ("It is predictable—if not obvious—that such schools will eliminate all vestiges of DEI to avoid even the possibility of funding termination."). Indeed, universities across the country have preemptively removed webpages that refer to their diversity values. Sharon Otterman et al., *Some Schools Act After Trump's D.E.I. Orders. Others Say They'll Resist*, N.Y. Times (Feb. 13, 2025), https://www.nytimes.com/2025/02/13/nyregion/

trump-dei-executive-orders-schools.html; *see also Nat'l Educ. Ass'n*, 2025 WL 1188160, at *14 ("[A]ny self-censoring has been caused by defendants' actions: promulgating a vague and threatening letter with the promise of swift enforcement and harsh penalties based on ill-defined criteria."). Still, it is individual people who are bearing the clearest burdens of chilled First Amendment rights: a high school teacher "no longer comfortable" asking students about racism under colonialism when teaching *Heart of Darkness* in his literature courses; or a middle school social studies teacher who "fears being accused of engaging in discrimination" when teaching how "the Jim Crow south, the founding of the KKK, and the Tulsa Race Massacre" have "shaped American history." *Nat'l Educ. Ass'n*, 2025 WL 1188160, at *20. The government's use of the Orders to coerce schools and educators clearly extends beyond activity that violates federal antidiscrimination statutes. The Court should resolve this appeal accordingly.

### 3. Termination of disfavored charitable activity

Just as this country's leading scientific research is intertwined with federal funding, its nonprofit sector also relies on federal grants and contracts. The Orders' termination of promised funds where the underlying project bears *any* relation to diversity, equity, inclusion, and accessibility is chilling charitable activity.

Various agencies have sent guidance to federally-funded nonprofit organizations stating: "All awardees must immediately cease all award activities

related to DEI or DEIA," without any definition or guidance or "illegal" qualifier, citing the Orders. *See, e.g.*, Dep't of Lab., Training and Employment Notice 21-24, at 1 (Jan. 22, 2025), https://www.dol.gov/agencies/eta/advisories/ten-21-24. The Department of Housing and Urban Development sent guidance to the National Fair Housing Alliance instructing that "any grants with certain terms deemed to have a 'conceptual relationship' to the Executive Orders would receive greater scrutiny. Such terms included 'racial,' 'underserved,' 'affirmatively,' 'systemic,' 'adversely,' 'accessible,' and 'disparate,' among others." Compl. at ¶¶ 91–92, Nat'l Urb. League v. Donald J. Trump, ECF No. 1, No. 1:25-cv-00471 (D.D.C. Feb. 19, 2025); *see also id.* ("These terms appear in some of the very laws and regulations about which NFHA and its members seek to educate the public and which they enforce, such as the Fair Housing Act and the Equal Credit Opportunity Act.").

The Department of Justice has cancelled **365 competitive grant awards**, worth $811 million, managed by the Office of Justice Programs, with many cancellations based on these Orders and some supposed connection to diversity, equity, inclusion, and accessibility. Sarah N. Lynch & Peter Eisler, *Exclusive: U.S. Justice Dept Grant Cuts Valued at $811 Million, People and Records Say*, Reuters (Apr. 24, 2025), https://www.reuters.com/world/us/us-justice-dept-grant-cuts-valued-811-million-people-familiar-say-2025-04-24. "Activating Change, a nonprofit that supports domestic violence victims with disabilities, lost five federal

grants totaling more than $2 million," including for activities that provided "American Sign Language interpretation services for domestic violence victims" or that "train[ed] police on how to investigate trafficking crimes against people with disabilities." *Id.* The Vera Institute lost all five of its federal grants, totaling approximately $5 million, for work related to "improv[ing] prison conditions and mental health crisis response, as well as training law enforcement to better serve deaf survivors of domestic violence." Serena Lin, *Trump's 'Opening Salvo' in his War Against Criminal Justice Reform Starts with this Nonprofit*, MotherJones (Apr. 14, 2025), https://www.motherjones.com/politics/2025/04/vera-institute-trumps-opening-salvo-in-his-war-against-criminal-justice-reform-starts-with-this-one-nonprofit. Other canceled grants "support[ed] intervention programs for nonviolent youth offenders"; "avert[ed] opioid-related deaths in Newark"; and "identif[ied] community-based approaches to preventing hate crimes against Arab, Jewish and Asian-Americans." Perry Stein et al., *DOJ Cancels Grants for Gun-Violence and Addiction Prevention, Victim Advocacy*, Detroit News (Apr. 23, 2025), https://www.detroitnews.com/story/news/nation/2025/04/23/doj-cancels-grants-for-gun-violence-and-addiction-prevention-victim-advocacy/83236873007.  In so doing, federal officials have specifically invoked the policy set by the Orders: "'This Department of Justice is focused on prosecuting criminals, getting illegal drugs off of the streets, **and protecting American institutions from toxic DEI** and sanctuary

22

city policies,'" a DOJ spokesperson said when asked about the cancellations. *Id.* (emphasis added).

These targeted activities do not constitute "illegal discrimination." Indeed, some cancelled activities are absurdly attenuated from diversity-related issues. "The urban forestry initiative, administered by the nonprofit Arbor Day Foundation, was supposed to distribute $75 million in grant funding to about 100 different cities, nonprofit organizations and tribes to plant shade trees in neighborhoods that need them the most." Eva Tesfaye, *Is Planting Trees 'DEI'? Trump Administration Cutes Nationwide Tree-Planting Effort*, NPR (Mar. 21, 2025), https://www.npr.org/2025/03/21/g-s1-55090/trump-dei-trees-removal-climate-change. "In a letter terminating the contract, the U.S. Forest Service stated the program 'no longer aligns with agency priorities regarding diversity, equity and inclusion.'" *Id.* One such canceled grant—$400,000 to the "Keep Indianapolis Beautiful" nonprofit organization for an urban forestry project—frequently used the terms "tree equity" and "biodiversity" when referring to disparities in forest cover. Jennie Runevitch, *Feds Pull the Plug on $400,000 'Keep Indianapolis Beautiful' Grant*, 13 WTHR (Feb. 28, 2025), https://www.wthr.com/article/news/local/feds-federal-government-pull-the-plug-on-400000-dollar-keep-indianapolis-beautiful-grant-indy-dei/531-c5319b64-0b2d-4d05-81eb-8f6eda63e529.

To recognize that the government understands the Orders to apply to far more than "illegal discrimination," one must only take them at their word (outside of court papers). The White House has clearly stated its intent to chill nonprofit activity of which it does not approve:

> The United States Government has provided significant taxpayer dollars to Nongovernmental Organizations (NGOs), many of which are engaged in actions that actively undermine the security, prosperity, and safety of the American people. It is the policy of my Administration to stop funding NGOs that undermine the national interest. . . . The heads of agencies shall align future funding decisions with the interests of the United States and with the goals and priorities of my Administration, **as expressed in executive actions**;

Memorandum from the White House, *Advancing United States Interests when Funding Nongovernmental Organizations* (Feb. 6, 2025), https://www.whitehouse.gov/presidential-actions/2025/02/memorandum-for-the-heads-of-executive-departments-and-agencies (emphasis added).

Again, the chilling effect is undeniable. The Orders specifically threaten investigations against "large non-profit corporations or associations" and "foundations with assets of 500 million dollars or more" perceived to be noncompliant. Exec. Order No. 14,173, 90 Fed. Reg. at 8635. The message is clear: halt your activities in line with the federal government's ideological preferences, or face retribution. *See, e.g.*, David A. Fahrenthold et al., *Nonprofits Dread Attempts to Scrutinize Diversity Initiatives*, N.Y. Times (Jan. 31, 2025),

24

https://www.nytimes.com/2025/01/31/us/politics/nonprofits-dread-attempts-to-scrutinize-diversity-initiatives.html. Some major organizations have in fact proactively adjusted their practices. *See, e.g.*, Drew Lindsay, *Trump's DEI Order Takes Aim at the Biggest Foundations. Here Are 346 that Could Face a Probe*, Chron. of Philanthrophy (Feb. 27, 2025), https://www.philanthropy.com/article/these-346-foundations-are-candidates-for-a-trump-dei-investigation (reporting that Chan Zuckerberg initiative "backtracked on its previous support of DEI efforts," announcing "it would discontinue funding social advocacy work and reassign DEI staff"); Alphonso David, Commentary, *Trump's Uncharitable War on Charity*, U.S. News (Apr. 9, 2025), https://www.usnews.com/opinion/articles/2025-04-09/trump-dei-nonprofits-philanthropy-free-speech-liberty ("Already, we're seeing a chill in corporate philanthropy that promotes racial and gender equality, . . . . [S]ome of the largest companies in America, including Pepsi, Target, McDonald's and Goldman Sachs, have announced they are scaling back diversity, equity and inclusion programs, including some involving philanthropic work."); Jasmine Mithani & Mel Leonor Barclay, *Domestic Violence Nonprofits Rocked by Trump Funding Freeze*, 19th News (Feb. 6, 2025), https://19thnews.org/2025/02/trump-funding-freeze-domestic-violence-nonprofits ("Fear that their access to federal funds will be restricted has prompted some groups to proactively edit their online presence to try

to align with the administration's views on diversity, equity and inclusion work, . . . .").

Both the federal government and the organizations being targeted recognize that the Orders cover far more than activity proscribed by federal civil rights statutes. The Court should resolve this appeal based on the same recognition.

### 4. Coercion of private sector ideological compliance

The Orders explicitly target "private-sector" "activities" related to diversity, directing "all agencies" to "take all appropriate action . . . to advance in the private sector" the policy of the Orders. Exec. Order No. 14,173, 90 Fed. Reg. at 8634–35. Further, the required "strategic enforcement" report must identify "potential civil compliance investigations of publicly traded corporations" alleged to be non-compliant with the Orders and must discuss "[o]ther strategies to encourage the private sector" to comply. *Id.*

The federal government's resulting coercion of private sector institutions has been widely publicized. For example, the Administration's targeting of specific law firms—deemed unconstitutional by numerous courts—has been rooted in part in allegations that their diversity practices violate the Orders. *See, e.g.*, EEOC, Letters, Review of [Law Firms'] Compliance with Title VII of the Civil Rights Act of 1964 (Mar. 17, 2025), https://www.eeoc.gov/sites/default/files/2025-03/Law_Firm_ Letters_-_03.17.2025.pdf (collecting enforcement Letters sent to 20 law firms in

26

March to enforce the policy of the Orders); *see Perkins Coie LLP v. U.S. Dep't of Just.*, --- F. Supp. 3d ----, 2025 WL 1276857, at \*22, \*28–30, \*45–47 (D.D.C. May 2, 2025) (finding unconstitutional vagueness and speech restrictions where government effectively punished law firm for "embrac[ing] programs and policies that espouse a belief in 'diversity, equity, and inclusion'" because "'threat[s] of . . . coercion' intended 'to achieve the suppression of disfavored speech' are sufficient to 'violate[] the First Amendment") (quoting *NRA v. Vullo*, 602 U.S. 175, 180 (2024)). Many law firms have chilled their diversity-related expression to avoid the Administration's ire. *See* Kristen Parisi, *DEI Tracker: Several Law Firms Retreat from DEI Following Trump Administration's Threats*, H.R. Brew (Apr. 2, 2025), https://www.hr-brew.com/stories/2025/04/02/dei-tracker-several-law-firms-retreat-from-dei-following-the-trump-administration-s-threats.

Likewise, dozens of publicly traded companies have drawn down their diversity-related activities. Conor Murray & Molly Bohannon, *Here Are All the Companies Rolling Back DEI Programs*, Forbes (Apr. 11, 2025), https://www.forbes.com/sites/conormurray/2025/04/11/ibm-reportedly-walks-back-diversity-policies-citing-inherent-tensions-here-are-all-the-companies-rolling-back-dei-programs (collecting examples and noting those that expressly cited the Orders as justification). Businesses that rely on federal contracts are especially vulnerable to the Orders' contract cancellation provisions, so some have taken

27

preemptive actions to comply. *See, e.g.*, Jeff Green, *Booz Allen Scraps DEI Programs in Reaction to Trump Orders*, Bloomberg (Feb. 7, 2025), https://www.bloomberg.com/news/articles/2025-02-07/booz-allen-scraps-dei-programs-in-reaction-to-trump-orders (reporting that major defense contractor was "ending its diversity, equity, and inclusion programs" specifically because of the Orders, even though company officials believed existing programs "comply with law"). Smaller contractor businesses are even more vulnerable. *See* Sam Blum, *'It's Pure Chaos.' Government Contractors Chart an Uncertain Path After Trump's Sweeping Anti-DEI Orders*, INC (Feb. 7, 2025), https://www.inc.com/sam-blum/its-pure-chaos-government-contractors-chart-an-uncertain-path-after-trumps-sweeping-anti-dei-orders/91145134 (quoting one small business executive: "To get funded, we needed to be in compliance with executive orders," which was understood to require "remov[ing] mention of DEI in our position descriptions" because, "we were told that our websites would be monitored"). The Office of Federal Contract Compliance Programs has undertaken an audit to enforce the Orders by reviewing the civil rights statements submitted by contractors, even though such submissions were previously mandated by federal guidance. Lauren Weber, *Trump Administration Takes DEI Battle to Federal Contractors*, Wall St. J. (Mar. 24, 2025), https://www.wsj.com/politics/policy/trump-administration-takes-dei-battle-to-federal-contractors-4ef6f31d. The State Department has even sought to

28

enforce the Orders abroad by threatening to cancel business with foreign contractors who engage in diversity activity. *See, e.g.*, Leila Abboud et al., *US Tells European Companies to Comply with Donald Trump's Anti-Diversity Order*, Fin. Times (Mar. 28, 2025), https://www.ft.com/content/02ed56af-7595-4cb3-a138-f1b703ffde84.

***

Additional examples abound—more than *Amici* can possibly list here. Indeed, new instances of chilled diversity activity arise every day as *Amici* author this Brief.

On May 7, several African investment funds flagged "struggle[s] to raise capital for women-led businesses" because "the US president's push against diversity, equity, and inclusion initiatives had caused institutional investors to back away from gender-lens financing." Alexis Akwagyiram & Preeti Jha, *Trump's DEI Ban Throttles Africa's Gender Investments*, Semafor (May 7, 2025), https://www.semafor.com/article/05/07/2025/trumps-dei-ban-throttles-africas-gender-investments. On May 8, CNN reported that "[u]niversities across the country are scrambling to comply with President Donald Trump's anti-diversity push in an effort to hold on to hundreds of millions of dollars in federal grants that fund critical medical research in areas such as cancer and maternal health." Sarah Owermohle, *Trump's Diversity Purge Freezes Hundreds of Millions in Medical Research at Universities across the Country*, CNN (May 8, 2025), https://www.cnn.com/2025/

29

05/08/politics/universities-medical-research-funding-frozen-trump-diversity-purge. On May 9, after the President carried out an unprecedented termination of the Librarian of Congress—the first woman and first Black person to hold the position— the White House Press Secretary stated that the termination was based on "concerning things that she had done at the Library of Congress in the pursuit of DEI." Sophia Nguyen & Herb Scribner, *Trump Fires Library of Congress Chief Carla Hayden, Citing DEI*, Wash. Post (May 9, 2025), https://www.washingtonpost. com/books/2025/05/08/trump-fires-librarian-of-congress.

Altogether, the government's public actions and statements reflect its intention and understanding that the Orders cover far more than violations of federal antidiscrimination statutes. The consequences are devastatingly real for the people and organizations living with them, and they undermine efforts to build a more equitable America. The Court should reject Appellant's all too convenient protestations to the contrary.

### III.   CONCLUSION

For the foregoing reasons, *Amici* urge the Court to affirm the district court.


Respectfully submitted,

*/s/ Sonia Kumar*

Michael R. Abrams
Deborah A. Jeon
Sonia Kumar
Zoe M. Ginsberg
**AMERICAN CIVIL LIBERTIES UNION OF
MARYLAND FOUNDATION**
3600 Clipper Mill Road, Suite 200
Baltimore, MD 21211
Telephone: (410) 889-8555
Facsimile: (410) 366-7838
michaelrossabrams@gmail.com
jeon@aclu-md.org
kumar@aclu-md.org
zginsberg@aclu-md.org

*Counsel for Amici Curiae*

31

## CERTIFICATE OF RULES COMPLIANCE

This Brief contains 6,458 words, in compliance with Rule 29(a)(5), excluding the parts of the brief exempted from the word count by Rule 32(f).

This brief complies with the font, spacing, and type size requirements of Rule 32(a).

This brief was not funded or authored, in whole or in part, by a party's counsel or any other person aside from *Amici*, their members, and their counsel.


*/s/ Sonia Kumar*
Sonia Kumar


## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2025, the foregoing Brief was served on all appropriate parties via CM/ECF system.


*/s/ Sonia Kumar*
Sonia Kumar