No. 25-1189

IN THE

# United States Court of Appeals for the Fourth Circuit

NATIONAL ASSOCIATION OF DIVERSITY OFFICERS
IN HIGHER EDUCATION, ET AL.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Maryland
Case No. 25-cv-333

**SUPPLEMENTAL BRIEF FOR PLAINTIFFS-APPELLEES**

Niyati Shah
Noah Baron
Alizeh Ahmad
ASIAN AMERICANS ADVANCING JUSTICE
  | AAJC
1620 L Street NW, Suite 1050
Washington, D.C. 20036
(202) 296-2300

Aleshadye Getachew
J. Sterling Moore
Brooke Menschel
Cynthia Liao
Audrey Wiggins
Skye Perryman
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ..............................................................................1

ARGUMENT .....................................................................................2

I.    *CASA* Permits Federal Courts to Issue Injunctions Covering Non-Parties When Necessary to Afford Complete Relief to Parties..................................2

II.    The District Court Should Apply *CASA* in the First Instance ........................4

III.    Any Injunction Must Be Broad Enough to Ensure That Plaintiffs Obtain Complete and Workable Relief ......................................................5

CONCLUSION ..................................................................................9

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*ABA v. DOJ*, No. 25-cv-1263, 2025 WL 1388891 (D.D.C. May 14, 2025)..............8

*Doe v. Trump*, 142 F.4th 109 (1st Cir. 2025)...............................................4

*Hadix v. Caruso*, 248 F. App'x 678 (6th Cir. 2007)...................................5

*Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006) ..........................................4

*Lucero v. Early*, 873 F.3d 466 (4th Cir. 2017) ..........................................4

*NAACP v. Alabama*, 357 U.S. 449 (1958)...................................................8

*Perkins Coie LLP v. DOJ*, No. 25-cv-716, 2025 WL 1276857 (D.D.C. May 2, 2025)................................................................................8

*Trump v. CASA, Inc.*, No. 24A884, 145 S. Ct. 2540 (2025)........................ 1, 2, 3, 4

*United States v. Texas*, No. 24-50149, 2025 WL 1836640 (5th Cir. July 3, 2025) ...................................................................................4

**INTRODUCTION**

In *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025), the Supreme Court decided that Article III courts likely exceed their equitable authority under the Judiciary Act when they expressly award universal injunctive relief covering parties other than the named plaintiffs. But *CASA* does not foreclose broader injunctive relief when necessary to provide complete relief to plaintiffs. *Id*. at 2540. The Court recognized that, for some injuries, "it is all but impossible for courts to craft relief that is complete *and* benefits only the named plaintiffs." *Id.* at 2557 n.12 (emphasis in original).

For Plaintiffs, it would be "all but impossible" for a court to completely redress the irreparable harm to them without an injunction categorically prohibiting enforcement of the relevant provisions of Executive Orders 14,151 and 14,173. If this Court concludes that the appropriate scope of injunctive relief should be reconsidered in light of *CASA*, it should remand that issue to the district court to decide in the first instance. Remand is the prudent and proper course because it will allow the district court to apply the Supreme Court's recent guidance to the facts, including recent developments that are likely to inform the appropriate scope of relief.

## ARGUMENT

**I.** ***CASA* Permits Federal Courts to Issue Injunctions Covering Non-Parties When Necessary to Afford Complete Relief to Parties**

The Supreme Court in *CASA* concluded that federal courts ordinarily may not issue universal injunctions covering non-parties as well as parties when exercising the equitable authority granted to them by the Judiciary Act of 1789. *CASA*, 145 S. Ct. at 2550. Key to understanding *CASA*'s impact is understanding what the decision did *not* do. It did not, for example, address the government's argument that Article III wholly forecloses injunctive relief covering persons other than named plaintiffs. *Id.* at 2550 n.4. Nor did it disturb the remedies available under the Administrative Procedure Act (APA) or resolve whether a court hearing a challenge under the APA may stay or vacate agency action affecting non-parties as well as parties. *Id.* at 2554 n.10. While the decision did hold that the injunction awarded to the associational plaintiffs in that case was broader than necessary to afford them complete relief, *id.* at 2557–58, it did not dismiss their claims or in any way undermine traditional associational standing principles. Finally, the decision did not address the scope of who can be *bound* by an injunction under Federal Rule of Civil Procedure 65(d)(2) by acting in concert or participation with a party or otherwise.

The Supreme Court also did not disturb the background principle of complete relief. The complete relief principle "has deep roots in equity" and

2

requires courts to examine "whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 2556, 2557 (emphasis in original). The Court recognized that an injunction that provides complete relief may have the "*practical effect* of benefitting nonparties," where that benefit would be "incidental." *Id.* at 2557 (emphasis in original) (citation modified). It also left open for the "lower courts" the state respondents' argument that "their harms . . . [could not] be remedied without a blanket ban on the enforcement of the Executive Order" at issue. *Id.* at 2258.

The nuisance example the Court employed illustrates how providing complete relief to a party may function similarly to universal relief. Importantly, the example makes clear that courts need not contort themselves to *avoid* an otherwise appropriate injunction. The Court explained that where "one neighbor sues another for blasting loud music at all hours of the night" and the "court has only one feasible option," it may "order the defendant to turn her music down—or better yet, off"—even when that "order will necessarily benefit the . . . surrounding neighbors too." *Id.* at 2557. The Court did not suggest that courts must pursue *in*feasible options—such as requiring a defendant to soundproof a plaintiff's home—just to avoid an incidental benefit to non-parties.

## II.    The District Court Should Apply *CASA* in the First Instance

If this Court believes the scope of relief needs to be reconsidered in light of *CASA*, the Court should remand that question to the district court to apply *CASA* in the first instance. The Fourth Circuit is a "court of review, not of first view," and it is appropriate to have the district court consider in the first instance the relevant factual questions that would underlie a *CASA* analysis. *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006). This is especially true given that the district court "did not have the benefit of" *CASA* to guide its initial analysis, *Lucero v. Early*, 873 F.3d 466, 471 (4th Cir. 2017), and given the factual questions that may need to be resolved under *CASA*. *See* 145 S. Ct. at 2558 (concluding that the "complete-relief inquiry is more complicated for the state respondents" and leaving the question to the "lower courts" "in the first instance"). As in *CASA*, other courts have remanded for consideration of the appropriate scope of relief. *See, e.g.*, *United States v. Texas*, No. 24-50149, 2025 WL 1836640, at \*38 (5th Cir. July 3, 2025) ("Like the Supreme Court in *Trump v. CASA*, we 'decline to take up . . . in the first instance' arguments as to the permissible scope of injunctive relief in the present case."); *Doe v. Trump*, 142 F.4th 109, 112 (1st Cir. 2025) (concluding it "prudent to remand to the District Court" the question of scope post-*CASA*).[1]

---

[1] Recent case-related developments, discussed below, provide even more reason for this Court to remand. Since Defendants filed this appeal, the Justice Department has announced a "Civil Rights Fraud Initiative" and issued "Guidance for

### III.   Any Injunction Must Be Broad Enough to Ensure That Plaintiffs Obtain Complete and Workable Relief

If this Court does reach the scope of relief, it should reject any argument for a narrow injunction that merely prohibits the Defendants from enforcing the Executive Orders against the named Plaintiffs. Such a narrow injunction would not provide complete relief to Plaintiffs and would prove unworkable. As Plaintiffs previously explained, the Executive Orders chill their speech both through the threat of direct enforcement against them and through the possibility of enforcement against non-members who would otherwise partner with them. *See* Resp. Br. 50–51. Consider, for example, a higher education institution that is *not* itself a member of the National Association of Diversity Officers in Higher Education (NADOHE). That institution may well terminate an individual NADOHE member's contract, employment, or ability to continue participating in NADOHE's equity-focused programming because the institution fears that its own grants and contracts would be at risk due to the Executive Orders and their implementation. *Id.* at 51 (citing SA24 ⁋ 22; SA27 ⁋ 33; SA28 ⁋ 34). This threat of enforcement—against any federal contractor or grantee, and by any federal

---

Recipients of Federal Funding Regarding Unlawful Discrimination." As explained below, these actions shed light on the Executive Orders' reach and their detrimental effects. Accordingly, they may affect the proper scope of injunctive relief and warrant initial consideration by the district court. *Cf. Hadix v. Caruso*, 248 F. App'x 678, 681–83 (6th Cir. 2007).

agency—emanating from the Executive Orders palpably harms Plaintiffs, even if the threat of enforcement is not directly targeted at Plaintiffs or their members. An injunction prohibiting enforcement of those Executive Orders is necessary not because it would directly benefit non-parties, but because it is the only way to afford complete relief to Plaintiffs themselves.[2]

Recent actions by the Justice Department further confirm the expansive enforcement contemplated by the Executive Orders and federal agencies that would make a narrow injunction inadequate. The Justice Department announced the "Civil Rights Fraud Initiative," promising "vigorous enforcement of the False Claims Act"[3] against federal funding recipients who knowingly violate civil rights laws, including "through diversity, equity, and inclusion (DEI) programs that assign benefits or burdens on race, ethnicity, or national origin." DOJ, Mem. from Todd Blanche, Deputy Att'y Gen., re Civil Rights Fraud Initiative, at 1 (May 19,

---

[2] An injunction limited to Plaintiffs and those they contract or partner with also would not provide complete relief to Plaintiffs. The associational Plaintiffs would be put to the unreasonable task of identifying every potential non-party contracting partner, employer, and even conference attendee for each of their members. By effectively requiring extensive disclosure of Plaintiffs' associational relationships, a narrow injunction would accomplish what it purports to prohibit. *See infra* pp. 8-9.

[3] In addition to harnessing the immense enforcement power of the federal government, the Department "strongly encourages" private parties to file qui tam actions against federal funding recipients suspected of illegal DEI or discrimination. *See* DOJ, Mem. from Todd Blanche, Deputy Att'y Gen., re: Civil Rights Fraud Initiative Mem. at 2 (May 19, 2025), https://perma.cc/P7SV-DGUG.

2025), https://perma.cc/P7SV-DGUG. Next, the Justice Department issued "guidance clarif[ying] the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ('DEI') programs." DOJ, Mem. from Pam Bondi, Att'y Gen., to all Fed. Agencies, re Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination, at 1 (July 29, 2025), https://perma.cc/K4PG-BJ2F. The Department warns federal funding recipients to "[m]onitor third parties that receive federal funds to ensure ongoing compliance," and to "[t]erminate funding for noncompliant programs." *Id.* at 9. The Department does not define alleged "DEI programs" yet offers several hypothetical examples that elucidate its sweeping (and incorrect) view that many such programs likely violate federal antidiscrimination laws. *See, e.g.*, *id.* at 5 (recruitment efforts that target "specific geographic areas" because of racial or ethnic makeup); *id.* at 5 (asking applicants to describe "obstacles they have overcome" in a way that may advantage those who experience obstacles tied to protected characteristics); *id.* at 8 (scholarships for "first generation students," if the goal is to improve racial or gender representation). Given the Justice Department's increased threat of enforcement, focus on grant recipients' relationships with third parties, and its sweeping view of how federal civil rights laws may apply to so-called "DEI

programs," Plaintiffs could not secure complete relief with anything less than an injunction that categorically prohibits enforcement of the Executive Orders.

Moreover, a narrow injunction would both prove unworkable and infringe on Plaintiffs' right of association. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) ("It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute [an] effective . . . restraint on freedom of association[.]"). The associational Plaintiffs, NADOHE and the American Association of University Professors, together have thousands of members nationwide, including individual and institutional members. *See* Resp. Br. 50–51. It is implausible to conceive of a narrow injunction under which members could enjoy the protections of the injunction without being identified to the government as members. And if those members are identified, they would face—or, at a minimum, reasonably fear—retaliation. *E.g.*, *Perkins Coie LLP v. DOJ*, No. 25-cv-716, 2025 WL 1276857, at *36 (D.D.C. May 2, 2025) ("EO 14230 was issued to seek retribution against plaintiff for the Firm's representation of clients in political campaigns or litigation."); *ABA v. DOJ*, No. 25-cv-1263, 2025 WL 1388891, at *7 (D.D.C. May 14, 2025) ("The ABA has made a strong showing that Defendants terminated its grants to retaliate against it for engaging in protected speech.").

The possibility that Plaintiffs, or their members, could later challenge any enforcement actions provides little solace. Once such efforts are initiated, the targets have already suffered substantial harm. And, regardless, identifying any of Plaintiffs' members to the government in the current environment would substantially chill speech and discourage individuals from associating with Plaintiffs—again, in violation of the First Amendment's guarantees.

## CONCLUSION

Should this Court determine that the scope of the injunction should be reconsidered in light of *CASA*, it should remand that issue to the district court to assess in the first instance with the benefit of the Supreme Court's guidance and relevant factual developments. To the extent that this Court rules on the scope of the injunction previously issued by the district court, it should account for *CASA*'s sanction of the complete relief principle.

Date: August 14, 2025                    Respectfully submitted,


                                         /s/ Aleshadye Getachew
Niyati Shah                              Aleshadye Getachew
Noah Baron                               J. Sterling Moore
Alizeh Ahmad                             Brooke Menschel
ASIAN AMERICANS ADVANCING JUSTICE        Cynthia Liao
    | AAJC                               Audrey Wiggins
1620 L Street NW, Suite 1050             Skye Perryman
Washington, D.C. 20036                   DEMOCRACY FORWARD FOUNDATION
(202) 296-2300                           P.O. Box 34553
nshah@advancingjustice-aajc.org          Washington, D.C. 20043
nbaron@advancingjustice-aajc.org         (202) 448-9090
aahmad@advancingjustice-aajc.org         agetachew@democracyforward.org
                                         smoore@democracyforward.org
                                         bmenschel@democracyforward.org
                                         cliao@democracyforward.org
                                         awiggins@democracyforward.org
                                         sperryman@democracyforward.org

                                         *Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 2,024 words. This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

Dated: August 14, 2025          */s/ Aleshadye Getachew*

                                Aleshadye Getachew